Sullivan,  ⎫
Oct. 28, 1901. ⎰

CHAMPOLLION v. CORBIN & a., Ex'rs.

Shares of corporate stock are property in the nature of choses in action and personalty, although the assets of the corporation may consist largely of real estate.

Until a decree of distribution, an heir-at-law has no title to the personal estate of a deceased ancestor and can maintain no action to recover it.

The right of an heir-at-law to a balance of personal estate remaining in the hands of an administrator upon settlement of an account is to be determined by the law of the ancestor's domicile.

This court cannot undertake to comply with the prayer of executors for direction as to the transfer of corporate stock until all parties who appear to be interested have been given an opportunity to be heard, and all questions of fact have been determined.

A mixed question of law and fact is not ordinarily determined in the supreme court.

BILL IN EQUITY. The case was submitted by agreement at the November term, 1900, of the supreme court, on the bill, answer, and such portions of the articles of incorporation, by-laws, and records of the Blue Mountain Forest Association as either party might choose to lay before the court; and was transferred by *Parsons*, J., without any findings of fact or rulings as to the law.

The allegations of the bill are in substance as follows :

The defendants are executors of the will of the late Austin Corbin and reside in New York, but own and occupy summer residences in Newport in this county. The plaintiff, a minor and the only child of Reni C. and Mary C. Champollion, both deceased, was born in France. His father was a French citizen; and his mother, who was a daughter of Austin Corbin, resided in France after her marriage. Since June, 1892, the plaintiff has resided in the United States, part of the time in New York and part of the time in New Hampshire. In June, 1889, Austin Corbin was appointed in this country guardian of the plaintiff; and in December, 1893, administrator in this country of the estate of Mary C. Champollion. In June, 1897, Hannah M. Corbin was appointed the guardian of the plaintiff in the state of New York.

In August, 1891, Corbin organized the Blue Mountain Forest Association for the purpose of holding and managing the park owned by him; and the capital stock, consisting of sixty shares of the par value of $100 each, was allotted as follows: fifty-six shares to Austin Corbin, and one share to each of four persons

who held the stock as trustees for Corbin. Subsequently Corbin surrendered the certificate for fifty-six shares, and in place thereof certificates were issued to himself, his wife, and his children, as follows : Austin Corbin, six shares; Hannah M. Corbin, Annie Corbin, Austin Corbin, Jr., Isabella C. Edgell, and Mary C. Champollion, ten shares each. The certificate for six shares issued to Austin Corbin was subsequently cancelled. The certificate issued to Mary C. Champollion was also cancelled, and in place thereof certificate No. 12 for ten shares was issued to Austin Corbin, trustee, and receipted for by " A. C., Trustee " in the handwriting of Austin Corbin. Certificate No. 12 was cancelled by certificate No. 13, for fifteen shares, issued to Austin Corbin and receipted for by him. The shares outstanding are held as follows : Austin Corbin, fifteen shares ; Hannah M. Corbin, Austin Corbin, Jr., Isabella C. Edgell, and Annie Corbin, ten shares each ; and five other persons hold one share each as trustees for the estate of Corbin.

In the record of the stockholders' meeting of March 24, 1894, appears the statement in the handwriting of Austin Corbin that personal notice was served upon the shareholders, among whom is named " Austin Corbin, administrator of the estate of M. C. Champollion, ten shares " ; there is in the same handwriting the statement that " Austin Corbin, for himself and as administrator," represented part of the capital stock ; and it is recited that among the stockholders present was " Austin Corbin, administrator, ten shares." The record of the meeting of September 10, 1894, states that among the shareholders participating was " Austin Corbin, fifteen shares " ; but it appears that the record was first written " Austin Corbin, Austin Corbin, administrator," and subsequently ink lines were drawn through the three words last quoted.

As the shares issued to Corbin's wife and children were donations, their obligations to him, his estate, and to each other were such as he chose to prescribe and they chose to agree to by accepting the stock. These obligations constitute a contract, embodied in article 13 of the by-laws, which is set out at length in the statement of facts accompanying the report of *Blue Mt. Forest Ass'n* v. *Borrowe, ante, p.* 69. The plaintiff has accepted, subject to the conditions of this by-law, the interest in the park coming to him through inheritance of the shares of stock belonging to his mother. He claims that these shares should be transferred to him or his guardian by the defendants, and that the contract expressed in the by-law should be enforced against the widow and surviving children of Corbin. He complains that the defendants have refused to transfer the shares to him, and are considering a sale to outside parties of the shares belonging to him and those actually the property of

the estate; and he believes there is danger that such sale will be consummated unless the defendants are restrained by the court.

The prayer of the bill is: (1) that the court will appoint a guardian *ad litem* for the plaintiff; (2) that the court will direct the defendants to transfer to the plaintiff or his guardian ten shares of stock of the association now standing in the name of Austin Corbin; (3) that the court will direct the defendants not to sell or dispose of other shares of stock belonging to the estate in violation of the contract alleged; (4) that pending the litigation the court will restrain the defendants from disposing of any stock in the association standing in the name of Corbin, or belonging to his estate although in the names of others.

The defendants' answers admit the truth of the plaintiff's allegations as to his age, birth, parentage, and residence; the parentage, residence, and death of his mother; their appointment as executors and their residence; the appointment of Austin Corbin as guardian and administrator, and that of Hannah M. Corbin as guardian; and the purchase of a tract of land by Corbin and its conversion into a park.

As to the allegations respecting the purpose for which the association was organized, the allotment of shares, the surrender and reissue of certificates, the facts disclosed by the records, the contract alleged to be expressed in article 13 of the by-laws, and the plaintiff's ownership of stock, the defendants have not such knowledge or information as enables them to admit or deny the truth thereof in sufficient fullness; and they pray that the plaintiff may be put upon his proof concerning the matters so alleged.

The defendants admit that they have been requested to transfer ten shares of stock to the plaintiff or his guardian, but say that Annie C. Borrowe of New York, a daughter of Austin Corbin and the person named in the bill as Annie Corbin, insists that all shares standing in the name of Austin Corbin and belonging to his estate should be sold; that she is seeking, in a proceeding pending in the surrogate's court of New York, to obtain a decree compelling such sale, without reference to any family compact or any such contract as alleged in the bill; and that they are advised that it is doubtful whether they can make such transfer as the plaintiff demands, except by order of court.

The defendants admit that they have been requested by Annie C. Borrowe to sell stock to outside parties irrespective of the contract alleged in the bill; but they have declined to make such sale, believing that the contract referred to was binding upon them, that the intention of the testator should be carried out, and that other members of his family holding stock had the right to insist upon an adherence to the terms of subscription. They are willing to

transfer to the plaintiff or his guardian any shares of stock upon a decree therefor; and they pray the direction of the court as to their duties in this respect.

*Hosea W. Parker* and *William E. Chandler*, for the plaintiff.

*Albert S. Wait*, for the defendants.

CHASE, J.　The subject-matter of this suit is ten shares of the capital stock of the Blue Mountain Forest Association, a corporation organized under the general laws of the state. Although the property of the corporation consists largely of real estate, these shares are choses in action, or property in the nature of choses in action,— not realty. 1 Mor. Corp., *ss.* 224, 225; 1 Cook Corp., *s.* 12; 1 Thomp. Corp., *ss.* 1066, 1070; 3 *Ib.*, *s.* 3317.

The plaintiff's alleged title to the shares depends solely upon the fact that he is the only child of the late Mary C. Champollion, who, he alleges, was the owner of them at the time of her decease. He does not claim that any decree has been made in the course of an administration of her estate by virtue of which he has acquired a title, but, in effect, says that the law, operating upon the fact that he is her only child, transferred her title to him, *ex proprio vigore*. He does not direct attention to any particular statutory provision which operates in this manner, but seems to rely upon the common law.

According to the common law, personalty did not, like realty, descend immediately to the heir upon the decease of the owner, but passed to the personal representative, to be used primarily for the payment of debts and other charges against the estate. Anciently, if there was any surplus, the administrator held it to his own use. The first statute of distribution was 22 and 23 Car. II, *c.* 10, enacted in 1670. By it the administrator was required to give a bond with two or more sureties to return an inventory; to administer the goods, chattels, and credits of the deceased according to law; to render a true and just account of his administration at or before a date specified; and to deliver all the rest and residue of the goods, chattels, and credits which should be found remaining upon settlement of his accounts unto such persons as the judge should by decree, pursuant to the statute, limit and appoint. *Archbishop of Canterbury* v. *Tappen*, 8 B. & C. 151. It provided that one third part of the rest and residue, or "surplusage," was to go to the widow, if any, and the residue in equal shares to the children or their representatives, making due allowance for advancements; or, if there were no children or representatives of children, one half was to go to the widow, and the residue equally to the

next of kindred in equal degree and their representatives. If there was no widow, the whole was to be distributed to the children or next of kindred, as the case might be. 2 Kent 420. The statutes of distribution of the several states are based upon this statute, and in a majority of the states the distribution is to the same persons, in the same proportions, and subject to the same regulations in substance. Sch. Ex. & Adm., *s.* 495; 2 Kent 426. The provisions of the statutes of this state are very nearly the same as those of the English statute. P. S., *c.* 188, *s.* 12; *Ib., c.* 195, *s.* 10; *Ib., c.* 196, *ss.* 1, 6.

If Mrs. Champollion's domicile was in this state at the time of her decease, the plaintiff has failed to allege or prove that he has acquired a title to the stock in question under the statutes of the state. Until a decree of distribution, "neither the widow nor the next of kin has any title to the personal estate, and, of course, can maintain no action to recover it." *Weeks* v. *Jewett,* 45 N. H. 540, 542; *Bartlett* v. *Hill,* 69 N. H. 197. If her domicile was elsewhere, as the plaintiff's allegations and the defendants' admissions tend to show, administration upon her estate here, if any there were, would be merely ancillary, and the plaintiff's right to any balance of property in the administrator's hands would depend upon the laws of her domicile. *Goodall* v. *Marshall,* 11 N. H. 88; *Leach* v. *Pillsbury,* 15 N. H. 137; *Leonard* v. *Putnam,* 51 N. H. 247; *Stark* v. *Parker,* 56 N. H. 481. If the court were at liberty to search for and ascertain those laws, they are prevented from doing so by the failure of the plaintiff to furnish definite information of the facts upon which domicile depends. In either contingency, the plaintiff does not show that he is entitled to maintain the suit.

It should also be borne in mind that it is only the "surplusage," or the portion of the personal estate "remaining in the hands of the administrator on settlement of his administration account," that is subject to distribution under the statutes of distribution; and for anything that appears in the case, the stock in question, if it belonged to Mrs. Champollion, may be required to pay debts or charges against her estate.

It appears that other parties are interested in the questions as to which the defendants in their answers pray for direction. Mrs. Borrowe, a child of Mr. Corbin and presumably interested in his estate, denies that Mrs. Champollion had any title or right to the stock in question. She further claims that the Corbin stock in the corporation should be sold without regard to the restraining provisions of the by-laws on the subject. The corporation itself and all the other stockholders are interested in the latter question. If the court of this state is authorized to comply with the defend-

ants' prayer,— a point that has not been considered,— it would not undertake to do so until these parties were given an opportunity to be heard upon the questions.

It further appears that the question of fact whether there was a perfected gift of the stock by Mr. Corbin to Mrs. Champollion has not been determined. This and all other questions of fact should be determined in the superior court, if the suit is prosecuted further in this state. " A question of fact is not ordinarily determined at the law term, however strong or conclusive upon one side or the other the evidence recited in the case may seem to be, and though all the evidence relating to it is reported." *Metcalf* v. *Weed*, 66 N. H. 176, 178; *Martin* v. *Livingston*, 68 N. H. 562; *Fellows* v. *Fellows*, 68 N. H. 611. Neither is a mixed question of law and fact ordinarily determined in this court. *Jones* v. *Company*, 62 N. H. 488, 490.

*Case discharged.*

All concurred.