Judge Ewing
delivered the opinion of the Court.
J. & H. P. Saufley brought suit, by petition and summons, against Harrison & William G. Ploward, and Mi-oajah Armstrong, upon a note for one hundred and five dollars and fifty one cents, signed “ Howards & Armstrong,” as promisors, and purporting to have been exe-cued by them, at Philadelphia, October 23rd, 1834, to Grigg & Elliott, and assigned by the latter to the plaintiffs.
The two Howards appeared and pleaded non est fac-tum; upon which issue was taken, and the suit abated as to Armstrong, upon the i'eturn of the sheriff.
The statements of parties that they were not to be liable, as partners, for debts contracted for goods to sell again, not made to the creditor, but in connection with an avowal that they were to participate in the profits, does not necessarily imply that they had not authorized the use of then-names & credit. Such authority may well be inferred from the fact that they received boxes of goods njarked with the address of a firm which included their names, Sr invoices in the same style, and made no objection to such use of their names.
Upon the trial of the issue, the plaintiffs proved, by McMillen, “ that the signature to the note sued on, was in the hand-writing of Armstrong. That, in the fall of 1834 or 6, he is not certain which, he was employed by the defendants as clerk in their store in Tompkinsville, when the first importation of goods, in the name of Howards & Armstrong, was made; that the goods were received by the defendants, and the boxes, in which they were imported, marked and directed to Howards & Armstrong, with bills of the goods accompanying them; and then the witness reminded the defendants, that they would perhaps be responsible for the goods; to which they answered, that if they were, it was contrary to their contract with Armstrong. Witness further said that they were partners in the profits of the store; but the goods were to be purchased by Armstrong himself, without any responsibility, on their part, for them.”
Upon this evidence, the Court, on the motion of the defendants’ counsel, instructed the jury to find as in case of a nonsuit. And a verdict having been found accordingly, and judgment rendered thereon, the plaintiffs have appealed to this Court.
The only question which we deem proper to notice, on the errors assigned, arises out of this instruction. — ■ We are clearly of opinion, that the instruction should not have been given.
From the facts proven, the jury might rationally have come to the conclusion, that the defendants occupied a condition in relation to the note', which legally subjected them to the payment of its amount: otherwise, that they were partners, as to the world, with Armstrong, and were bound by his signature of their names to the note.
It appears, or is inferrible from the evidence, that a contract was entered into between them and Armstrong, by which goods were to be purchased at Philadelphia, to be sold out at Tompkinsville, and that they were to be partners in the profits of the store established at the latter place, for the sale of the goods. That the goods were purchased by Armstrong, in the names of How-ards & Armstrong, and the note in contest executed by him in the same name, for a part of the same goods. *369 And that the goods were transported to Tompkinsville, marked in the name of the firm, received by the How-ards thus marked, and sold out under their direction.
From these facts, some of which have been directly proven, and others might have been rationally inferred from the facts proven, we cannot doubt that the jury were warranted in finding, or might have found, a verdict for the plaintiffs.
The contract, that they were not to be liable for the goods, but that they were to be purchased by Armstrong, will not, in our opinion, exempt them, as a matter of course, from responsibility, if the partnership or association was entered into before the purchase by which they were to be sharers in the profits.
It is well established, that he who has a right, by the terms of association, “to share in the profits, becomes chargeable as a partner to third persons, in respect of transactions arising out of the trade or particular adventure, in the profits of which he is to participate.” Gow on Partnership, 15; Grace vs. Smith, 2 Blacks., 998; ex parte Hamper, 17 Ves., 404; ex parte Langdale, 18 Ves., 301; Fromont vs. Coupland, 2 Bing.
“ And the reason why such a person becomes, by implication and operation of law, clothed with the character of partner, is that, by the effect of the agreement for participation, the party participant takes from the creditors a part of that fund which is the proper security to them for the satisfaction of their debts, and upon which they rely for payment.” Gow on Partnership, 16; Grace vs. Smith, (supra;) Webb vs. Halsey, 16 Johns. Hep., 40.
The reason of the rule applies with peculiar force to the case before the Court. The vendors of the goods in Philadelphia had1 a right to look to the goods sold, and the profits made upon their retail, as a fund for the payment of the debts contracted, upon their purchase. If the Howards can come in and withdraw and apply to their own use, the whole or a portion of the profits, they abstract so much of the fund to which the creditor had a right to look, and lessen his security to that extent. As participants in the profits, therefore, they might be made liable for the debts, unless the vendor knew of the *370 alleged special agreement inter se, and trusted Armstrong alone. And this might be the case, even if they had been dormant partners in the profits, and their names an£l character had not been known to the creditors.— And much more might they be made responsible, in a case like the present, if Armstrong, in whom they had confided, and before had entered into an association with, as is inferrible from the proof, held them out as partners, and used their names in making the purchases.
Indeed, it would not require any great stretch of presumption, to come to the conclusion, from the facts .proven, that, by the arrangement between them and Armstrong, the latter was to use their names as partners in the purchases; and especially as the contract between them, it may b.e presumed, was in their own possession and power, and might have been produced to repel any unwarrantable presumption which might have been indulged against them. Their failure to produce it, .strengthens the presumptions against them.
Their statement that, by the contract between them and Armstrong, they were not to be liable for the goods, does not, per se, exempt them from responsibility, nor does it necessarily conflict with the presumption that he was authorized to use their names, or, by their assent, did use them. Such a contract may have been made, inter se, yet not be obligatory upon third persons. Such a contract may have been made with a view to •eventual indemnity from Armstrong, in case of loss, yet may stand consistent with an express or implied authority to Armstrong, to use the name and credit of the association in making the purchases. And, if this were not the case, why did they receive, open and sell the goods directed and marked in their partnership name, without objection or complaint? The facts exhibiting themselves to the clerk, at once produced conviction on his mind, that the defendants might be held liable. The same facts were apparent to them, yet they raised no objection as to the manner in which the purchase seemed to have been made, but relied on their contract to exempt them from .responsibility.
*371 Upon the whole, we are satisfied that the jury, upon-the facts of the case before them, in the absence of any countervailing, explanatory circumstance, might have found for the plaintiffs. The instruction, therefore, should not have been given.
It is, therefore, considered by the Court, that the judgment of the Circuit Court be reversed, and the cause re--manded, that a new trial may be granted, without costs.