## Allegheny N. Bank, Appellant, *v.* Bailey et al.

*Limited partnership—Defective organization—Estoppel.*

A creditor, who has knowledge of, participates, aids and assists in the organization of a limited partnership by his debtors and others, and subsequently, as arranged beforehand, receives the bonds of the association in payment of the indebtedness, is estopped from alleging a defective organization to hold the members liable as general partners.

Argued Nov. 9, 1891.    Appeal, No. 96, Oct. T., 1891, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1889, No. 770, on verdict for defendant.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

Assumpsit by the Allegheny National Bank against " James M. Bailey, Thomas Fawcett, Samuel S. Brown and James L. Marshall, who survives Hugh Lee, deceased, late partners doing business under the name and style of the Keystone Coal Company, Limited," to recover upon mortgage bonds, issued by the Keystone Coal Company, Limited, to the amount of fifteen thousand dollars.   Issue.

At the trial, on May 12, 1890, the execution and issuance of the bonds having been shown, evidence introduced by the defendants claimed to establish a defence briefly summarized as follows:

In the summer of 1876, Hugh Lee and James L. Marshall were carrying on a coal business in the firm name of Lee & Marshall.   They owned an undivided one half interest in a coal field of about eleven hundred acres in Washington county, Pa., the legal title being held in the name of Hugh Lee.   The other half interest was owned by James M. Bailey.   The field as a whole was encumbered by liens for unpaid purchase money amounting to about thirty thousand dollars.

Lee & Marshall were largely indebted at the time to a number of banks in Pittsburgh, one being the Allegheny N. Bank. Being unable to pay their indebtedness, they were granted an extension of two years; and, under an arrangement to secure the banks, they executed a mortgage to Thomas Fawcett, as trustee, upon their one half interest in said coal, subject to the payment of their one half of the purchase money liens.

Before the extension had expired, the creditors, including the Allegheny N. Bank, by papers executed by Lee & Marshall and themselves, agreed to accept from Lee & Marshall a conveyance of "all their right, title, interest and claim" in said coal lands, "in full liquidation and payment of all and singular the claims held by said creditors against the said Lee & Marshall."   It thus resulted, as was claimed, that the bank creditors, including the plaintiff, became the owners in fee of the equitable title to the coal field, subject to the purchase money encumbrances.   The coal was then undeveloped.

In 1878, Hugh Lee, James L. Marshall, James M. Bailey, Thomas Fawcett and Samuel S. Brown acquired another coal field lying in whole or in part in West Virginia, but contiguous to the one above mentioned.   This field, called the lower

field, contained about twelve hundred acres, and reached to a river front on the Ohio opposite Steubenville. The parties then all came together, in an effort to realize by putting both coal fields into one, as was claimed. Frequent conferences were held, the plaintiff bank being represented at many of them by its president Mr. Cook, or by its cashier Mr. McCandless.

The first proposition considered was to form a corporation, and that the banks and the other owners interested should convey to the corporation both coal fields, and receive in payment for their interests in the tract capital stock in the corporation. This scheme was abandoned, one reason being, as was alleged, that the banks, being national banks, doubted their power to put their property into a corporation and receive capital stock for it. Finally, it was agreed that a limited partnership association should be formed, under the Act of June 2, 1874, P. L. 271, by Bailey, Fawcett, Brown, Lee and Marshall; that the entire capital stock thereof should be paid by the conveyance to the association of all the titles to both coal fields, and that mortgage bonds should afterwards be issued, which to the extent of their claims should be received by the banks, and secured by a transfer of capital stock.

In pursuance of the foregoing, a limited partnership was formed by articles and statement dated February 17, 1879, but recorded on October 1, 1879. In the meantime, however, the conveyances provided for had been made, the prior liens discharged, bonds issued and secured by first mortgage, and the original trust mortgage to Thomas Fawcett, to secure the banks on their claims against Lee & Marshall, satisfied. Upon a portion of the mortgage bonds received by the plaintiff bank this suit was brought. For the organization of the limited partnership, alleged in this case to have been defective, and other relative matters, see Cock v. Bailey, 146 Pa. 328.

After Oct. 1, 1879, the Keystone Coal Co., Limited, began the development of its property, and for a while seemed to be in a prosperous condition; but in 1883, it was unable to meet the interest on its bonds and pay its matured obligations, and proceeded to liquidation under the direction of the court of common pleas of Washington county, to No. 163 June Term 1883.

The foregoing facts, as claimed by the defendants to have been established by the evidence adduced, were many of them strenuously disputed by the plaintiff.

COLLIER, J., charged the jury in part as follows :

" The defence is this : That the bank had a security securing the debt of Lee & Marshall ; that they had it, is undisputed. That it was proposed by the bank, when there was talk about forming a partnership,—for Lee & Marshall, who had gotten into trouble, could not go any further, owed these debts—that Mr. McCandless, cashier, or, the president of the bank at that time, proposed in conversation that they should get some more land, form a corporation, and go into business ; that the bank had an interest in this land ; that they would go in with the defendants ; and, after talking it over they concluded, the parties concluded, Mr. McCandless or Mr. Cook, some of them, that it would not do to go into a corporation on account of taxes, and they would not go in ; that is the defendants' allegation. That, then, the limited partnership, this partnership, was talked of and proposed, I think they said, by Mr. McCandless or Mr. Cook, some of them ; that that was talked over and they appeared willing, the defendants allege, to go into it, understood all about it ; and then having considered the matter, said as a national bank could not go into that kind of business, they could go on with a limited partnership, form a limited partnership, and there would not be any personal liability ; that they should give this general mortgage to secure these bonds, and that the bank would take the bonds for their debt, and the money that they were to advance to pay off these liens. That is the theory of the defendants. They have offered testimony sustaining it. Some of the witnesses, I think Mr. Bailey, says it was fairly understood all the way through by the officers of the bank ; that was what was to be done ; and if that is believed, if the weight of evidence, the burden being on the defendant, is that there was such an agreement to take these bonds in this way for their security, that would estop the bank from setting up a personal liability ; that is, it would be an agreement that they take these bonds secured by this mortgage, and would not look to the defendants individually. [6]

" I have outlined, gentlemen, the defence, and you see that is the main question in the case. To establish that there was an

agreement that would estop the plaintiff, the burden is on the defendants.  They must satisfy you clearly of that from the weight of the evidence.  The plaintiff denies it in *toto*, and you have the question in the case ; and the able arguments on both sides will help you to determine that question.  That is the only question in the case.  The defendants are liable to pay these bonds, unless they can satisfy you that such an agreement was made. . . ."

The defendants request the court to charge :

1. If the jury believe from all the evidence in the case that the Allegheny National Bank agreed with the defendants and Hugh Lee, now deceased, that a limited copartnership should be organized in the mode and manner in which the Keystone Coal Company, Limited, was organized, and stock and bonds issued as were issued by the Keystone Coal Company, Limited, then, although the jury should find, or the court should charge that said limited copartnership was not organized in accordance with the laws of the state of Pennsylvania, yet the bank itself having thus agreed to the organization in this manner would be estopped to set up or claim that such an organization and issue of stock and bonds, or either, created a general partnership on the part of these defendants.  Answer : That is affirmed, if you believe the facts stated in the point. [4]

2. If the jury should find that the Keystone Coal Company, Limited, was organized at the request of the plaintiff and other banks, who then were the equitable owners of a large tract of coal, and that the mode and manner of the formation of the partnership, and the issuing of the stock and bonds was determined upon prior to the organization of the company, by the Allegheny National Bank and these defendants and others, and in pursuance of such an agreement the Keystone Coal Company, Limited, was organized by the defendants, and bonds and stocks were issued, then the plaintiff bank, by thus requesting and consenting beforehand to the same, would be estopped to claim that the limited partnership was not formed in accordance with the laws of the state of Pennsylvania, and could not recover against the defendants as general partners.  Answer : Affirmed. [5]

Verdict and judgment for defendants.  Plaintiffs appealed.

*Errors assigned,* were (4, 5) the answers to defendants' points; (6) the portion of the charge embraced in brackets.

*John Dalzell* and *M. A. Woodward,* with them *Lewis McMullen* and *C. C. Dickey,* for the appellant.—As to the defective organization of limited partnerships, counsel cited: Vanhorn v. Corcoran, 127 Pa. 255; Maloney v. Bruce, 94 Pa. 249; Sheble v. Strong, 128 Pa. 322; Andrews v. Schott, 10 Pa. 55. That knowledge of the plaintiff of the intention to form a limited partnership, in which the lands were to be contributed towards the capital, and by which bonds were to be issued to the creditors of Lee & Marshall, constituted no defence.

*D. T. Watson,* with him *S. A. McClung, Hill Burgwin, C. C. Burgwin* and *W. W. Wishart,* for the appellees, cited: Bates on Lim. Part. § 73; Lancaster v. Choate, 5 Allen, 530, 539; Robinson v. McIntosh, 3 E. D. Smith, 221, 233, 234; Hughes v. Bank, 110 Pa. 428; Horter v. Silliman, 3 W. N. 405; Dollar S. Bank v. Burns, 87 Pa. 491; Bryar's Ap. 111 Pa. 90.

PER CURIAM, January 4, 1892.

This was an attempt to hold the defendants liable as general partners, upon the ground that the limited partnership behind which they seek to shelter themselves was not organized in the mode designated by the act of assembly. The whole case turns upon the knowledge of the bank of the organization referred to, and its participation therein. This question of fact was fairly submitted to the jury, and they have found in favor of the defendants. It needs no argument to show that, if the bank advised and assisted in the organization of the limited partnership, it cannot now allege that such organization was defective, and seek to hold the members liable as general partners. Under the circumstances, we are not called upon to pass upon the legal effect of the articles of association. It is sufficient to say they are good as against the plaintiff.

Judgment affirmed.                                    C.