## Horton v. Sherrill-Russell Lumber Co., et al.
## Horton v. Sherrill, Russell & Blow.

(Decided February 29, 1912.)

Appeals from McCracken Circuit Court.

1.  Corporations—Stockholders—Liability on Subscriptions to Stock—
    Conflict of Laws.—The Liability of stockholders for unpaid sub-
    scriptions is determined by the law of the State where the cor-
    poration is organized and exists.

2. Evidence—Judicial Notice—Laws of Other States—Presumptions.
—The court does not take judicial notice of the laws of a sister
State; but such laws must be proved as any other fact, when re-
lied on to maintain an action or defense. Where there is no proof
on the subject of the law of a sister State, it will be presumed
that the common law of the sister State is the same as the
common law of Kentucky; and in the absence of adjudications by
the court, the court will follow the common law as laid down by
the weight of authority.

3. Stockholders—Payment for Stock in Property of Less Value—
Common Law Liability—Creditors.—By the weight of authority
at common law, corporate creditors can not hold stockholders
liable on stock which has been issued for property, even though
the property was turned over to the corporation at an agreed
valuation which is largely in excess of the real value of the
property. The remedy is by rescission.

WHEELER & HUGHES for appellant.

D. G. PARK for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing on Original Appeals and Af-
firming on Cross-appeals.

These two actions were consolidated and tried to-
gether below, and will be considered in one opinion.
The actions were originally brought by appellees, Sher-
rill-Russell Lumber. Company, and Sherrill, Russell &
Blow, against F. Morris, Charles K. Wheeler and others,
and Merganthaler-Horton Basket Company, and Mer-
ganthaler-Horton Basket Machine Company, to recover
of Morris, Wheeler and others, alleged stockholders of
Merganthaler-Horton Basket Company, the amount of
their unpaid subscriptions to the capital stock of that
company. The case is not now before us so far as the
original defendants are concerned. Some time after the
original actions were brought, amended · petitions were
filed making appellant, Emmet Horton, a party defend-
ant, and seeking a recovery against him. Defense was
made, proof heard and upon final submission, judgment
was rendered against him in favor of appellee, Sherrill-
Lumber Company, for the sum of $741.50, with interest
from January 17, 1907, and costs, and in favor of Sher-
rill, Russell & Blow for $692.20, with interest from Sep-
tember 1, 1907, and costs. From these two judgments,
Horton appeals.

Appellant, Emmet Horton, is a mechanical engineer

of Elmira, New York, and the inventor of a machine for making baskets. The invention was patented, and a corporation known as to the Horton Basket Machine Company, with a capital stock of $300,000 which was subsequently increased to $500,000, was organized under the laws of West Virginia, for the purpose of taking over the patents and manufacturing the machines. Appellant assigned his patents to this company, and received 4,651 shares of stock. He was also employed at a salary of $50 per month, and in addition thereto received certain royalties. The machines were made at Elmira, N. Y.

On January 1, 1902, the Merganthaler-Horton Basket Machine Company, with a capital stock of $500,000, which on February 4, 1902, was increased to $1,000,000, was incorporated under the laws of Maine. This company acquired the stock of the West Virginia corporation, and also appellant's patents. Appellant transferred his 4,651 shares of stock in the Horton Basket Machine Company to the Merganthaler-Horton Basket Machine Company and also his patent rights, and received from the latter company 139,501 shares of its stock of the par value of $1 per share. Appellant's royalties were also guaranteed by the Maine Corporation, and his salary was fixed at $200 per month. While the reports made by the treasurer of the Maine Company to the Secretary of State show that appellant was a director of the Maine Company; Horton swears that he resigned from the directory in 1903 because he was dissatisfied with the company's manner of conducting the business. Some time after the organization of the Maine Company, it acquired a lot of land in Paducah, Kentucky, erected a plant, and proceeded to manufacture baskets.

On August 9, 1904, a Kentucky corporation, known as the Merganthaler-Horton Basket Company, was organized with a capital stock of $100,000. This company acquired the plant of the Maine Company, and seems to have transferred the greater portion of its authorized capital stock to that company. Appellant was never a stockholder in the Kentucky Company. The enterprise was not successful. Appellees, who had furnished supplies and materials, sued both the Maine and the Kentucky corporation, and recovered judgments for the amount of their respective claims. Subsequently a suit was filed in the Federal Court for the appointment of a

receiver of the Kentucky Company. A receiver was appointed, and its assets disposed of to certain parties who afterwards sold them to the Federal Crate & Basket Company, another corporation which was afterwards made a party defendant to this action, and judgment rendered in its favor. It appears, however, that appellant owns 400 shares of stock in this company. Appellees insisted below that this stock should have been subjected to the payment of their debts, and from that part of the judgment denying them this relief, have prosecuted and been granted a cross-appeal.

Appellees insist that the judgment in their favor was proper. They argue that both the Maine Company and Kentucky Company are insolvent. The creditors have not been paid. The debts of the Kentucky company are the debts of the Maine Company because the latter owned practically all the capital stock of the Kentucky Company. Furthermore, they obtained judgments against the Maine Company, and as appellant transferred only 4,651 shares of the West Virginia Company, of the par value of $10 a share, and received therefor 139,501 shares of the Maine Company of the par value of $1 per share, he is liable to the creditors of the Maine Company for the difference between the value of the 4,651 shares, or $46,510 and the par value of the 139,501 shares of the Maine company, or $139,501, which is $89,091, and far in excess of the amount of appellees' debts. Upon the question of values, appellant testifies that he transferred his patent right to the West Virginia corporation for 4,651 shares of stock, and that he regarded the transaction as worth $50,000 to that company. He says that he received the stock of the Maine corporation for the stock of the West Virginia corporation. At the time of the first transfer of the patents, there were but one or two patents issued. When the second transfer was made, the value had very largely increased by reason of additional inventions and improvements and new designs which appellant had made. He, therefore, regarded them of very great value, and said it would be difficult for him to state just what they were worth.

All the authorities agree that the liability of stockholders for unpaid subscriptions must be determined by the law of the State where the corporation is organized and exists. (Ball v. Anderson (Pa.), 79 Am. St. Rep., 693; Hancock National Bank v. Ellis, 166 Mass., 414, 55 Am. St. Rep., ——; Marshall v. Sherman, 148 N. Y., 9;

51 Am. St. Rep., 654; Williams' Exor. v. Chamberlain, 123 Ky., 150.) The Merganthaler-Horton Basket Machine Company was organized and existed under the laws of Maine. There is neither pleading nor proof of what the law of that State is, and the articles of incorporation throw no light upon the question. We do not take judicial notice of the laws of another State. Where the law of another State is relied on to maintain an action or defense, it must be proved as any other fact. Where there is no proof on the subject, it is presumed that the common law of a sister State is the same as the common law of Kentucky (Yellow Poplar Lumber Co. v. Ford, 141 Ky., 5; 131 S. W., 1010; and cases cited). While we have passed upon many cases involving unpaid stock subscriptions, our conclusions were based on the provisions of charters involved, or arose under our incorporation acts. We have never decided whether or not, at common law, a stockholder who receives stock of a corporation in payment for property of less value, may be compelled by creditors of the corporation to pay the difference. That being true, we shall follow the common law rule, as laid down by the weight of authority.

Cook on Corporations, 6th Edition, Vol. 1, section 46, states the rule as follows:

"At common law it is well settled that corporate creditors can not hold stockholders liable on stock which has been issued for property, even though the property was turned over to the corporation at an agreed valuation which was largely in excess of the real value of the property. There have been cases which refuse to follow this rule, but it is clearly established by the great weight of authority. The reason of the rule is that if the payment by property was fraudulent, then the contract is to be treated like other fraudulent contracts. It is to be adopted in toto, or rescinded in toto and set aside. Both parties are to be restored as nearly as possible to their original positions. The property or its value is to be returned to the person receiving the stock, and he must return the stock or its real value. In New York and England as stated above, at common law, the stockholder is not liable at all to corporate creditors, even though the overvaluation was gross and clearly known to be. The remedy is rescission and not the making of a new contract by the court. There are other cases, however, which hold that where the property so turned in had no substantial value, or where the overvaluation was fraud-

ulent, the court will hold the stockholders liable for the par value of the stock, less the value of the property. Still other cases hold that where the stock has no value when it is issued for property, the creditors are not deprived of anything, and hence can not complain. "If when disposed of by the railroad company, it was without value, no wrong was done to creditors." Such is the language of the Supreme Court of the United States."

In the same section the same learned author states the rule as follows:

"At common law there is no contract, express or implied, to pay the corporation or to corporate creditors the par value of stock which is issued for property. Not only is there no such contract, but there is no implied fraud, even though the property was overvalued. If there is express fraud, the law provides ample remedies, but such a fraud must be clearly proven, and is not implied from proof that the property was worth less than the par value of the stock." .

See also Fogg v. Blair, 139 U. S., 118; Colt v. Gold Amal. Co., 119 U. S., 343 Northwestern, &c., Ins. Co. v. Cotton, 70 Fed. Rep., 155. In Phelan v. Hazard, 5 Dill., 45; s. c., 19 Fed. Cases, 429, Judge Dillon thoroughly reviewed the authorities and said:

"The contract is valid and binding upon the corporation and the original sharetakers, unless it is rescinded or set aside 'for fraud; and * * * while the contract stands unimpeached, the courts, even where the rights of creditors are involved, will treat that as a payment, which the parties have agreed should be payment."

As appellees failed to plead and prove the law of Maine, and no recovery at common law can be had in such a case, it follows that the judgments below are erroneous.

Wherefore, the judgments on the cross-appeals are affirmed, and the judgments on the original appeals are reversed, and cause remanded, with directions to enter judgments in conformity with this opinion.