## Napier v. Wooton, Trustee.

(Decided June 18, 1920.)

### Appeal from Perry Circuit Court.

1. Partnership—Negotiable Instruments—Plea of Non Est Factum.
   —In this action by appellee upon two notes alleged to have been executed by a partnership and in which appellant sued as an alleged member of the partnership, by separate answer pleaded non est factum and denied that he was a member of the partnership, the jury were properly advised of all the law of the case by instructions which, in substantially correct terms, defined what constituted a partnership and told them that if they believed from the evidence the appellant was a member of the partnership when the notes sued on were executed, they should find for appellee; but if not then a member of the partnership they should find for appellant, unless they further believed from the evidence that, though not in fact a partner, appellant by his voluntary acts or statements held himself out to the public and to appellee as such, and the latter was induced thereby to believe and in good faith did believe him a member of the partner-

ship and, by reason thereof, accepted the notes sued on for a debt or debts owing him by the partnership, when otherwise he would not have done so; in which event their verdict should be for the appellee.

2. Partnership—Negotiable Instruments—Authority of Partner to Sign Note.—It was not prejudicial error for the trial court to refuse an instruction offered by appellant by which the jury, would, in effect, have been told that, although they might believe from the evidence appellant was a member of the firm or partnership sued when the notes in question were executed, they nevertheless should find for him, unless they further believed from the evidence that he authorized the signing of the firm name of the partnership to the notes by the partner who performed that act. It is a general rule of the law of partnership that each member of a partnership has authority to sign the name of the firm to any instrument of writing the execution of which appertains to, or is necessary in, the customary conduct of its business. Indeed, in the absence from the articles or contract of partnership of some restriction dissallowing or limiting such right known to the party dealing with the firm through one of the partners, the authority of the latter to sign the name of the partnership to any paper required by law to bind it in the transaction, is implied and may be presumed and acted upon by such party.

FAULKNER & FAULKNER for appellant.

WOOTON & MORGAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below by the appellee, E. C. Wooton, as trustee of the numerous corporations, firms and persons named in the petition, seeking to recover of an alleged mercantile firm styled Napier and Richie, and I. B. Richie, J. B. Cornett and the appellant, C. L. Napier, partners composing that firm, the amount of each of two past due notes, one of $1,333.00, and the other $1,334.00, with six per cent interest on each note from April 14, 1914, executed by the firm of Napier and Richie to the appellee, E. C. Wooton, as trustee, to evidence the indebtedness of the firm to the several corporations, firms and persons mentioned in the petition.

As Richie and Cornett made no defense to the action, judgment went against each of them by default. Napier, however, resisted a recovery on the notes as to him by answer containing a plea of *non est factum,* and denying that he was a member of the firm of Napier and

Richie; that there was such a firm; that he had any part
in incurring the indebtedness for which the notes were
given, or that I. B. Richie, by whom they were executed,
had authority to execute them for the firm of Napier
and Richie, or to sign his (Napier's) name to them.
All affirmative matter of the answer was controverted
by reply and on the trial which followed the appellee
recovered a verdict and judgment against Napier for
$2,293.62, the aggregate of the principal of the two notes
sued on, after crediting the first of them with $373.38,
paid thereon. The latter was refused a new trial and
has appealed.

It appears from the averments of the petition and
the appellee's evidence that on April 14, 1914, A. H.
Campbell and J. W. Walker, composing a firm known
as Campbell and Walker, failed in business owing a
large indebtedness to the several corporations, firms
and persons for whom appellee sues as trustee in the
instant case, and that by agreement between Campbell
and Walker, appellee as trustee of their creditors re-
ferred to, and I. B. Richie, and the appellant, C. L. Na-
pier, partners composing the firm of Napier and Richie,
the stock of merchandise of Campbell and Walker was
sold to the firm of Napier and Richie at the price of
$4,000.00, for which the latter firm executed to the ap-
pellee, Wooton, as trustee of the creditors of Camp-
bell and Walker, their three notes, the first for $1,333.00,
due in sixty days, the second for $1,333.00, due in 120
days, and the third for $1,334.00, due in 180 days after
date, and each of the notes bearing interest from its
date, April 14, 1914; that the firm of Napier and Richie
at once took possession of the stock of goods and be-
gan to sell same in the due course of trade, and with
Cornett, whom they later took into the firm, continued
to do so until the whole were disposed of; that the first
of the three notes given for the stock of goods was paid
to the appellee, Wooton, as trustee by the firm of Napier
and Richie, but the second and third notes, except the
$373.38, credited on the second, though past due, re-
mained unpaid, which necessitated the bringing of suit
thereon as was done by the appellee in the present ac-
tion. It is insisted for appellant that the evidence in-
troduced by appellee failed to establish his liability upon
the notes, and that the trial court's refusal of his re-
quest, made at the conclusion thereof, and later

when all the evidence was in, for an instruction peremptorily directing a verdict in his behalf was prejudicial error. Our examination of the evidence compels the rejection of this contention. According to the testimony of the appellee, Wooton, and the witness, Eversole, appellant, though absent when the contract for the purchase of the stock of merchandise of Campbell and Walker was closed by the firm of Napier and Richie and the contract of sale and notes were signed for the firm and in its name by I. B. Richie, had on one occasion at least been present while negotiations respecting the sale were pending and in conference with Richie, the latter of whom recently had been his partner in another mercantile business. Appellee also testified that appellant talked with him before the sale regarding the contemplated purchase by Napier and Richie of the Campbell and Walker stock of merchandise and, in substance, then told him that Richie, his brother-in-law and partner, was the man mainly interested in the business and what he did would be all right with him (Napier); and further, that in a subsequent conversation occurring between them near the First National Bank in Hazard shortly after the sale, he said to the appellant, Napier, that he had gotten a good deal out of the Campbell and Walker stock of goods, which, though invoiced at $4,800.00, his firm had bought at $4,000.00. To which appellant replied "that he did not know about that; that he thought he gave a plenty for the goods and probably more than they would have given if he had been here.   .   .   .   It's all right, whatever Richie had done about it is all right. He is the man that will run the business and I am only in it to help him."

Appellee further testified that in still another conversation occurring between him and the appellant after the maturity of one or more of the notes his firm had given for the Campbell and Walker goods, the latter said to him, in substance, that they (Napier and Richie) if given time, would pay the notes. It was also testified by appellee, Eversole and one or more additional witnesses that they had frequently seen the appellant, after the purchase by Napier and Richie of the Campbell and Walker stock of merchandise, in and about the store where the goods were kept and sold and sometimes behind the counter, and that he seemed to be tak-

ing such part in the business as would ordinarily be exercised by one having a proprietary interest; furthermore, that they had known him to handle and collect for the firm accounts for moneys arising from sales it made of the Campbell and Walker goods, and in several instances pay debts of the firm contracted after its purchase of the Campbell and Walker stock; among which were payments to appellee for goods sold by him to the firm from time to time to replenish its stock.

In addition to the evidence stated, is the further testimony of appellee, supported by the admission of appellant, that the first of the three notes executed to appellee as trustee by Richie for the firm of Napier and Richie on its purchase of the Campbell and Walker stock of merchandise, was paid with money belonging to appellant equally with Richie, which was collected by them of one Baker to whom they had sold, before their purchase of the Campbell and Walker goods, a grocery store and business which had been operated by them as partners.

Yet other evidence was introduced by appellee, furnished mainly by the testimony of Eversole, supported in some measure by the admissions of appellant, to the effect that following the failure of Napier and Richie and closing out of their business, which occurred about eight months after their purchase of the Campbell and Walker goods, the firm was sued by certain creditors both in the quarterly and circuit courts for debts contracted in the conduct of its business during those eight months, to none of which did appellant, although sued as a member of the firm and served with process, make any defense, and in each of which judgment went against him, Richie, Cornett and the firm by default. Eversole, who is a lawyer, also testified that about the time of the institution of the suits mentioned he held for collection a claim or claims against the firm of Napier and Richie for a debt or debts contracted at the time and in the same business those mentioned were contracted; that in an effort to collect such claim or claims of appellant he had a conversation with the latter in which he said, in substance, that he had so arranged his property as that it could not be subjected to the payment of any further debts, which arrangement, as he then and later on his cross-examination as a witness in the instant case admitted, was effected by conveying his

real estate to his wife. It also appears from the testimony of appellee and other of the witnesses named, that appellant during the eight months continuance of the business of Napier and Richie often complained of the absence from the store of Richie and of his neglect of the business; and after the failure of the firm, claimed it was caused by Richie's neglect and that it would not have occurred, if he (appellant) could have given his attention to the conduct of the business.

I. B. Richie was not introduced as a witness by either party and the only evidence in behalf of the appellant was furnished by his own testimony and that of another witness, one Shade Nease. The testimony of the former, exclusive of the admissions made by him as already set forth in the opinion, was emphatic in its denials that he was a member of the firm of Napier and Richie; that he was a party to or interested in the purchase by Richie, of the stock of merchandise of Campbell and Walker, or that the execution of the notes therefor to appellee as trustee by Richie for Napier and Richie was known to or authorized by him. He admitted his knowledge of the negotiations between appellee and Richie regarding the purchase by the latter of the Campbell and Walker stock of goods and that he had with appellee a conversation before the contract of sale was consummated, but denied the giving of his consent to the purchase of the goods by Richie, and also that he made in that conversation the statements or any of them indicating such consent or his connection with Richie as a partner, attributed to him by appellee; and, on the contrary, said he advised the latter of his refusal to become a party to the purchase of the Campbell and Walker stock of goods by Richie and told him that if he sold the goods to Richie "that's all right, that's your business and his."

Appellant also denied the conversation appellee claimed to have had with him near the First National Bank in which he said appellant, in substance, admitted he was a partner in the firm of Napier and Richie, its liability on the notes sued on and Richie's control of the partnership business; likewise the conversation with appellee in which the latter claimed he again confessed liability on the notes and said that if given time they (Napier and Richie) would pay them. Appellant admitted that he frequently visited the store where Richie

and Cornett kept and sold the stock of goods purchased of Campbell and Walker; but denied that he handled or sold any of the goods or took any control of the business. He denied that he told Eversole he had so arranged his property as would prevent its being subjected to the payment of his debts, but admitted that his real estate had been conveyed to his wife. In explanation of what he did in the matter of collecting the accounts of Napier and Richie, appellant, in substance, testified that they mainly were accounts created while the firm was engaged in the grocery business which had been sold to Baker; and that the very few accounts he may have collected or attempted to collect for goods sold from the Campbell and Walker stock of goods, was for the purpose of assisting his brother-in-law, Richie, who was badly in need of the money to pay his debts, and not because of his (Napier's) pecuniary interest in or connection with the store or business Richie was conducting.

Appellant's witness, Nease, who professed to have been present when the conversation between appellant and appellee, first related by the latter, took place, being introduced gave a version of what was said, which while in some sort corroborative of that of appellant in meaning, greatly differed from it in the language employed; for according to Nease's vague testimony after appellee and "another fellow," whose name he did not give, met appellant the following conversation ensued: "They told him (Napier) they wanted to sell dry goods, and he told them no he didn't want to buy none; and they said 'I will go on and sell' and he said 'do it if you want to,' he didn't want to buy."

It is apparent from what has been said of the evidence, that while conflicting in many of its details, considered as a whole, it strongly conduces to establish appellant's liability upon the notes sued on; its most convincing features being its showing of the conduct of appellant in participating with Richie in the management of the store and business following the purchase of the Campbell and Walker stock of merchandise; his collecting of many of the firm's accounts and applying the money to the payment of some of its debts; his acquiescence in the use of $1,333.00, derived from the sale of another store and business formerly owned and operated by Napier and Richie, and which money they jointly owned, to pay the first of the notes executed in

the name of the firm for the Campbell and Walker stock of goods; and his failure to make defense to suits brought against him and the firm of Napier and Richie on other debts created by the firm after its purchase of the Campbell and Walker stock of goods, and permitting judgment by default thereon, all testify more strongly than the oral statements and declarations of human witnesses in condemnation of the defense interposed by his answer in the instant case. At any rate, the facts and circumstances referred to, saying little of the weight that should be given the direct testimony of the witnesses in the case, refute and overthrow the contention of appellant that the trial court erred in refusing to direct the return of a verdict in his behalf; and also his further contention, that the verdict returned is flagrantly against the evidence. Manifestly, appellant was not entitled to a new trial on either of the grounds indicated.

We think appellant's complaint of the instructions given by the trial court also without merit. As instruction number 1 only defines in admittedly correct terms a partnership and is not criticised by appellant's counsel, discussion of it will not be necessary.

The other instructions from 2 to 4 are objected to. No. 2 told the jury, in substance, that unless they believed from the evidence that when the stock of merchandise of Campbell and Walker was sold and delivered the alleged firm of Napier and Richie and when the notes sued on were executed, the appellant, Napier, was a partner of the defendant, Richie, in the dry goods business, they should find for him; but if they believed from the evidence that he was at the time mentioned a partner of Richie in such business they should find against him and in favor of appellee the amount due on the notes sued on. By instruction 3 the jury were told that although they might believe from the evidence the appellant, Napier, was not in fact a partner of Richie, if they further believed from the evidence that he held himself out to the public or to appellee as such partner and the latter sold the Campbell and Walker stock of goods to Richie as one of the partners and accepted therefor the notes of the partnership as executed by him, believing in good faith from the voluntary acts and statement of the appellant that he was a partner of Richie, they should find for appellee.

Instruction 4 substantially told the jury that although they might believe from the evidence the appellant had been a partner of Richie in the grocery business, prior to the execution of the notes sued on, they should not find against the appellant, unless they believed from the evidence as defined in instruction one or two. We think it manifest that these instructions gave, in substantially correct terms, the whole law of the case, as applicable to the facts developed by the evidence. If appellant was in fact a member of the firm of Napier and Richie, he was liable on the notes. On the other hand, if not a member of the firm and he voluntarily held himself out as such and caused appellee by his conduct or representations in good faith to extend credit to the firm by accepting the notes sued on, when otherwise such credit would not have been given, his liability on the notes is equally clear.

Appellant also complains of the refusal of the court to give two instructions offered by him. The first advised the jury that they should find for appellant, unless they believed from the evidence that he authorized Richie to sign the firm name of Napier and Richie to the notes sued on, obviously, on the facts here presented, this instruction does not correctly state the law. If in fact appellant and Richie were partners, as predicated in instruction 2 that was given by the court, special authority to Richie from appellant to sign the firm name to the notes was not necessary. For in that state of case such authority, in the absence of a restriction imposed by the terms of the partnership disallowing such right and known to the party dealing with the partner signing the name of the firm, exists by implication and may be exercised.

Of the second instruction offered by appellant it is only necessary to say, that its refusal by the trial court was not error, because substantially all it contains was expressed in instruction No. 3 that was given. The record fails to show that the trial court committed any prejudicial error in the admission or rejection of evidence; and as none of the several grounds urged by appellant for a reversal is sufficient to that end, the judgment is affirmed.