## Dunning, Jr. v. Gibbs, et al.

(Decided February 16, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Evidence—Common Law Presumed to be in Force in Another State in Absence of Pleading or Proof of Foreign Statute and Presumed to be the Same as Common Law of Kentucky.—In absence of pleading or proof of a foreign statute, it will be presumed that common law is in force in the other state and that it is the same as the common law of Kentucky.

2. Partnership—Agreement Between Partners Limiting Liability is Good Between Them, But Not as to Creditor Unless he Knew of Agreement.—Though agreement between partners that one or more of them shall not be liable for debts is good as between the partners, it does not affect rights of a creditor unless he knew of the agreement and trusted those who by its terms were liable.

3. Joint Stock Companies and Business Trusts—Partner Knowing of Limited Liability could Not Claim Individual Liability in Action on Contract with Partnership.—Where plaintiff aided in organization of partnership designated as unincorporated joint stock association, signed articles, became officer, and knew that agree-

ment limited liability to partnership assets, he could not in action on contract with partnership, claim that partners were individually liable.

4. Joint Stock Companies and Business Trusts—Partner Not Individually Liable Because of Executing Contract for Partnership and Using the Word "I," where Partnership was Limited Liability Company.—Where partner's contract with other partners was made on behalf of the company and contemplated binding of partnership assets only, one of the partners cannot be held personally liable because he executed the contract and indicated by use of the word "I" that contract was made between him and the plaintiff.

TRABUE, DOOLAN, HELM & HELM and RICHARD H. HILL for appellant.

BLAKEY, DAVIS & LEWIS and BARRET & NETTELROTH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by William H. Dunning, Jr., against J. D. Gibbs, Charles W. Inman, Fleet H. Goodridge, L. L. Anderson and Milburn P. Kelley, the demurrers of the several defendants were sustained to the petition and the petition was dismissed. Dunning has appealed.

Briefly stated, the facts pleaded and shown by the exhibits are as follows:

On or about March 27, 1919, plaintiff and defendants formed a partnership designated as an unincorporated joint-stock association known as the Wichita-Nolan Oil Company, with its principal office at Louisville, Kentucky. At the same time he and the defendants, who were shareholders, executed articles of association which were recorded in the office of the county clerk of Nolan county, Texas. Plaintiff and defendants were then elected and appointed trustees of the Wichita-Nolan Oil Company, and executed a declaration of trust which was also recorded in the office of the county clerk of Nolan county, Texas. Article IV. of the articles of association provided:

"No member of said company or owner or holder of this certificate as such, shall have any authority, power or right whatsoever to do or to transact any business whatever for, on behalf of or binding upon the company, or any member thereof, and no member of this company shall be personally liable for any debts, covenants, demands or contracts

of any kind, or torts of this company, beyond the payment in full of the price for which his shares were sold to him by the company.''

Article VIII. provided:

"A declaration of trust in accord herewith shall be executed by the trustees binding alike upon them, their successors, survivors and all persons dealing with them. The trustees, their survivors and successors shall have no power to bind the shareholders personally, and in every written contract they shall enter into they shall, where acting in their capacity as trustees, or where the writing is made with reference to the company's business, property or any part thereof, make due reference to the declaration of trust; and the person, firm or corporation so contracting with them shall look only to the funds and the property of the company for the payment of any debt, judgment or other obligation; and neither the trustees or shareholders present or future shall be personally liable for any debt or obligation incurred by the trustees or officers of the company. In all deeds and conveyances the trustees shall set forth that such conveyance is to them to be held in accordance with the declaration of trust and these articles of association.''

The fifth clause of the declaration of trust is as follows:

"The trustees, or the survivors of them, their successors and survivors, shall have no power to bind the shareholders; and in every written instrument and contract they shall enter into, they shall refer to the declaration of trust, and the persons, firms or corporations so contracting with them shall look only to the funds and property of the company under such contract, and for the payment of any debts, damages, judgment, decree which may in any wise be due, or of any money that may become due and payable in any way by reason thereof; and neither any trustee or shareholder, present or future, shall be personally liable therefor, or for any debt incurred or engagement or contract made by the board or any officer, agent or servant acting under him or them on behalf of the company. The funds and property of the company shall stand

charged with the burden of paying any claim or money demand established or existing on account of the operations and business of the company, whether foundered on tort or contract, to the end that the members of the company may be protected from personal liability.''

After the articles of association and declaration of trust were recorded, the defendant Gibbs was elected president and plaintiff was elected vice president and general manager.  On December 12, 1919, a contract was entered into between the Wichita-Nolan Oil Company and plaintiff whereby plaintiff was to complete a well already commenced and was to receive at the end of the drilling the drilling outfit and all appurtenances.  Plaintiff performed this contract and received the drilling outfit. Later on, he did other drilling under the direction of Gibbs, for which he promised to pay plaintiff the sum of $200.00 per day.  On about October 2, 1920, plaintiff resigned as trustee and sold his stock to Gibbs.  Gibbs instructed plaintiff to suspend operations and submitted the following contract, which plaintiff signed and accepted on October 23, 1920:

"Sweetwater, Texas.
October 22, 1920.

"Judge Geo. T. Wilson,
        Sweetwater, Texas.

"Dear Mr. Wilson:

"Pursuant to the conversation with you in your office today, I beg to submit below the basis on which I shall be pleased to adjust the question now in dispute between Mr. Dunning and myself on behalf of the Wichita-Nolan Oil Company.

"In view of the conditions now existing at our lease, I feel it is best to make a change of the plan of operations in order to bring the said operations to a conclusion as economically and as early as possible. To this end I have had submitted by competent parties a proposition to complete our well on a footage basis, with extra consideration for any necessary under-reaming.  Parties submitting this proposition are prepared to begin operations at once, and from the nature of the terms of such agreement it is believed that every effort will be put forth to complete the work in the shortest possible time.

"In order to consummate this deal and push forward our operations, it will be necessary for Mr. Dunning to agree that I take the authority and management of operations and that he withdraw from both authority and practicable management, in which event he is of course at liberty to remain at our lease, or have any representative he may elect on the ground all or any part of the time. I further agree that, although it is not prescribed or considered in the existing contract, we will pay Mr. Dunning on the basis of $500.00 per month from the date this agreement is accepted until final settlement under the original contract is effected.

"I further agree to indemnify Mr. Dunning against the breakage or damage (other than ordinary wear and tear or shrinkage of value) of any of the tools, equipment or casing which would appreciably impair the salable character of the said casing and equipment.

"This company agrees to indemnify Mr. Dunning to the extent of the difference between $26,000.00—the actual amount of the expenses in the execution of his contract terminating July 13, 1920—and that actual price that he may obtain from all the equipment and tools accruing to him under the terms of the contract at the time such sale is effected, provided that the sale shall be effected within sixty days after operations cease, and that the terms of sale shall be approved by both parties hereto.

"It is also understood that none of the appliances, machinery, tools or casing will be removed from the well without Mr. Dunning's consent.

"It is also agreed that when the well is completed if it is a producer I will purchase the casing from Mr. Dunning at its present current value, and if the well is abandoned the crew that I have on the job will pull the casing for Mr. Dunning at the least possible expense.

"J. D. GIBBS,
For trustee of Wichita-Nolan Oil Co.
"I hereby accept the following proposition.
Sweetwater, Texas,
Oct. 23, 1920.
WM. H. DUNNING, JR."

On October 23, 1920, plaintiff turned over all of the drilling outfit in accordance with the contract. The

board of trustees and Gibbs retained and used the machinery and equipment until October 28, 1921. About November 1, 1921, the machinery and equipment were turned over to plaintiff. In the meantime it had been damaged to the extent of $2,190.00. Plaintiff then disposed of the machinery, equipment, etc., for $15,500.00, or $10,500.00 less than the sum of $26,000.00, guaranteed under the contract of October 23, 1920. For these sums and interest, a recovery was asked.

It is argued that as the contract was executed and was to be performed in Texas, the law of Texas is controlling, and we are cited to the decisions of the Supreme Court of that state which it is claimed sustain the rule that in the circumstances presented the trustees are partners, and, therefore, individually liable for the debts of the association. The difficulty with this contention is that the law of Texas was not pleaded, and it has always been the established rule in this jurisdiction that in the absence of either pleading or proof it will be presumed that the common law is in force in another state, and that it is the same as the common law of this state. Horton v. Sherrill-Russell Lumber Co., 147 Ky. 226, 143 S. W. 1053; Blair v. Norfolk & W. Ry. Co., 162 Ky. 833, 173 S. W. 162; Elswick v. Ramey, 157 Ky. 639, 163 S. W. 751; United States Cast Iron Pipe & Foundry Co. v. Henry Vogt Mach. Co., 182 Ky. 473, 206 S. W. 806; Husband v. Linehan, 168 Ky. 304, 181 S. W. 1089, Ann. Cas. 1917D 954.

At an early date we gave effect to the rule that though an agreement between partners that one or more of them shall not be liable for debts is good as between them, it does not affect the rights of a creditor unless he knew of the agreement, and trusted those who by its terms were liable. Saufley v. Howard, 7 Dana 367. The rule has been recognized in more recent cases, Napier v. Wooton, 188 Ky. 542, 223 S. W. 155; Hurtig v. Lebus, 201 Ky. 125, 255 S. W. 1060, and is not without support in other jurisdictions. Allegheny National Bank v. Bailey, 147 Pa. 111; Collier on Partnerships, p. 214; Fletcher's Cyclopedia of Corporations, section 6172; McCarthy v. Parker, 243 Mass. 465. The rule proceeds on the theory that where the power of a partner to bind his associates is limited the limitation is effective as to a third person who contracts with knowledge of the limitation. The rule is peculiarly applicable to the facts of this case.

Plaintiff was one of the organizers of the association. He signed the articles of association and the declaration of trust. He became its vice president and general manager. He knew that the agreement under which he and the defendants became associated provided that neither the trustees nor the shareholders should be personally liable for any debt or obligation incurred by the trustees or officers of the company. When he executed the contract sued on he looked only to the partnership assets, and is not now in a position to insist that the partners are individually liable.

But it is insisted that Gibbs is liable because he executed the contract and indicated by the use of the word "I" in two or three of the paragraphs that the contract was between him and plaintiff. We are not disposed to sustain this contention. At the very outset the contract purports to have been made to adjust a matter in dispute between plaintiff and Gibbs, "on behalf of the Wichita-Nolan Oil Company," and, considered in the light of the context, the surrounding circumstances and the articles of copartnership, must be construed as an agreement to bind only the partnership assets.

On the whole we conclude that the court did not err in holding that the defendants were not individually liable on the contract.

Judgment affirmed.