## Ing, et al. v. Liberty National Bank.

(Decided October 5, 1926.)

### Appeal from Warren Circuit Court.

1. Joint-Stock Companies and Business Trusts.—Unincorporated syndicates are partnerships, each member of which is liable personally for debts of syndicate.

2. Joint-Stock Companies and Business Trusts.—Articles of syndicate, declaring individual members not liable for syndicate's debts, though good as between them, held not to relieve members from individual liability as partners on syndicate's note.

3. Banks and Banking.—Notice to borrower is not notice to lender bank, though such borrower may be officer of lender.

4. Banks and Banking.—Where president of bank was member of unincorporated syndicate, notice to him of limitation on liability or indivdual members of syndcate was not notice to bank from whch it obtained loan.

JOHN L. STOUT for appellants.

DENHARDT & HUNTSMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

The Liberty National Bank brought this suit on a note for $7,600.00, executed to it by "Burton Oil & Gas Syndicate, by G. M. Williamson, trustee." The plaintiff made all the members of the syndicate defendants and prayed judgment against them personally on the note. Judgment was rendered in favor of the plaintiff as prayed, and eight members of the syndicate appeal. There were some twenty odd members of the syndicate, but the others do not complain.

The Burton Oil & Gas Syndicate was an unincorporated syndicate formed in Bowling Green for the purpose of putting down wells exploring for oil. The articles of the association, among other things, contained these provisions:

"It is expressly agreed that the signers of this trust agreement shall have the power to sue and be sued, and to contract and to be contracted with, and to borrow and to lend money under the name of the Burton Oil & Gas Syndicate.

"The affairs of the Burton Oil & Gas Syndicate shall be managed and controlled by a board of

five directors, which board shall select from its members the following officers, a president, a vice-president, a secretary and treasurer.

"None of the directors, officers, agents or employees of this syndicate shall have the right, power, or authority under any circumstances, to bind or obligate any of the unit-holders personally; and in every written contract of agreement that shall be entered into in the name of this syndicate, reference shall be made to this instrument to the effect that the person, firm or corporation so contracting with this syndicate may know the extent of said syndicate's power and authority to contract, and to what extent it may incur liability, and that the unit-holders are not liable for the syndicate's debts, and that the personal property of said unit-holders shall not be liable for the debts of said syndicate."

The proof shows these facts: There were meetings of the members of the syndicate from time to time, each of the members being notified by postcard of the time and place of the meeting. They first spent all the unit money and were in the middle of the business and had to get more money. A meeting was called which made a 50% assessment, and that assessment was all paid. When that money was used up and another meeting was called, another assessment was made of 50%. That was only paid by a part of the members. The money ran out and another meeting was called and at that meeting a loan was authorized to meet the debt. There was need for the money at once. A loan was authorized, in such amount as was necessary. If the assessments had all been paid the loan would not have been necessary at that time. The amount then needed was $7,000.00, and pursuant to the authority of the members of the syndicate the officers went to the Liberty National Bank and borrowed $7,000.00, giving a note therefor, which was signed by the syndicate and some members of it as sureties. This note was not paid at maturity and ran along for some months. Then the note sued on was executed in renewal of the original note and included the interest thereon and some overdrafts that had been made in the meantime. The name of the syndicate was signed to the note by G. M. Williamson, who was the president of the syndicate and was acting as trustee and man in charge.

It is a well settled rule in this state that these unincorporated syndicates are simply partnerships and that each member of the syndicate is liable personally for the debts of the syndicate. Roller v. Madison, 172 Ky. 693; James v. Stokes, 203 Ky. 127; Standard Drilling Co. v. Slate, 203 Ky. 599.

It is earnestly insisted that this rule has no application here because it is provided in the articles of the syndicate that the unit-holders are not liable for the syndicate's debts and that the personal property of said unit-holders shall not be liable for the debts of said syndicate. But in Dunning v. Gibbs, 213 Ky. 81, this court thus stated the rule as to a like provision in syndicate articles:

> "At an early date we gave effect to the rule that though an agreement between partners that one or more of them shall not be liable for debts is good as between them, it does not affect the rights of a creditor unless he knew of the agreement, and trusted those who by its terms were liable."

A number of authorities supporting this conclusion are collected in that opinion. The only evidence offered on the trial to show that the bank had notice of this provision is that Governor H. H. Denhardt was president of the bank and was also one of the members of the syndicate and was present at the meeting of the syndicate at which the borrowing of the money was authorized. The governor has suffered judgment to go against him and is not making this defense. A man cannot be at the same time borrower and lender. If he is the borrower notice to him is not notice to the lender, although he may be an officer of the lender, for his interest is antagonistic to the lender. Sebold v. Citizens' Deposit Bank, 105 S. W. 130; Taulbee v. Hargis, 173 Ky. 433; Owsley County Deposit Bank v. Burns, 196 Ky. 359; Davidson v. First Nat. Bank, 214 Ky. 417.

As Governor Denhardt was one of the borrowers of the money notice to him of the restrictions in the articles of the syndicate was not notice to the bank, although he was the president of the bank. There being no other evidence of notice to the bank the judgment in favor of the bank was proper. The instructions of the court were more favorable to the defendant than the evidence warranted.

Judgment affirmed.