## Citizens Life Insurance Co. v. Owensboro Savings Bank & Trust Co.'s Receiver, et al.

(Decided January 9, 1912.)

### Appeal from Daviess Circuit Court.

1. **Debtor and Creditor—Action to Declare Transfer of Claims and Preference—Limitation—Evidence.**—In an action to declare certain transactions with reference to the delivery of paper a preference, evidence examined and held that the lower court did not err in refusing to declare it a preference, as the action was barred by the six months statute.

2. **Same—Failing Debtor—When Lien Commences.**—One creditor of a failing debtor will not be allowed to make an advantageous exchange of property, and not account for it to the other creditors. The lien in such case will commence at the time the property was received.

BRUCE & BULLITT for appellant.

R. A. MILLER and R. S. TODD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming on the Cross Appeal and Reversing on the Appeal.

The appellee, The Owensboro Savings Bank & Trust Company, did a banking business in the City of Owens-

boro for several years prior to April 21st, 1908. On that date it made an assignment to the appellee, T. A. Pedley. It was then insolvent, and had been for several years prior to that time.

The appellant, the Insurance Company, had been engaged in its business in the city of Louisville during that time. W. H. Gregory was its president and L. W. Key was its treasurer.

James H. Parrish was the president of the bank, and four of his brothers were stockholders in, and officers of, the bank; and James H. Parrish was also one of the stockholders and a member of the Finance Committee of the Insurance Company, and so continued until the bank made the assignment.

It appears to have been understood between the officers of the Insurance Company and the president of the bank, that all the surplus received, above what was necessary to conduct the insurance business, should be deposited in the banks throughout the State, whose officers were stockholders in the Insurance Company. The appellee bank was to have about one-fifth of such surplus. The result was, that sometime in the early part of the year 1907, the Insurance Company placed on deposit in appellee bank about ten or twelve thousand dollars, and there it remained, without anything to secure it, until the month of December, 1907, when the president of the bank delivered to the Insurance Company many notes; a list of them was made, and a writing evidencing that fact placed with the Insurance Company as collateral security for the deposit referred to. The writing was made in duplicate, and one was given to the bank, the other to the Insurance Company. The writings were not dated. Shortly before the bank assigned, two of the brothers of J. H. Parrish observed that the bank's duplicate was without date, and inserted the date from their best recollection, as the 24th day of December, 1907. If this was the correct date, this action was brought in time, or within six months from the time the collaterals were pledged; but the Insurance Company claims that these receipts were executed, and claims placed in the hands of the Insurance Company as collateral security, on the 14th day of December, 1907. If this be true, the action, by which it is sought to have this transaction declared a preference of creditors, is barred, more than six months having elapsed.

The testimony shows, without contradiction, that at

the time these claims were transferred to the Insurance Company as collateral, the papers, by some oversight, were not dated. The appellees base their whole claim on this point, to the effect that the duplicate in the hands of the bank was dated the 24th day of December, 1907. As stated, the evidence shows that this date was inserted several months after the execution of the paper.

Appellant introduced five or six witnesses, who were members of the Finance Committee of the Insurance Company, including James H. Parrish, who turned the collaterals over to the Insurance Company, who testify that the transaction occurred on the 14th day of December, 1907, at Louisville, in the Insurance Company's office, and support their statements with many documents prepared at the time. With this uncontradicted testimony, we agree that the lower court did not err in refusing to declare the matter referred to as a preference, as it was barred by the six months statute.

Now, on the 4th day of February, 1908, James H. Parrish, the president of the bank, wrote to the Insurance Company, asking it to return several notes against one Lashbrook, amounting to $525, as he desired to pay them, and also enclosed in the letter two notes, one on John G. Delker for $1,500, and the other one on James H. Parrish for $1,000; both, as stated, were secured by realty, asking the Insurance Company to take and hold these notes in lieu of the Lashbrook notes, which was accepted. The lower court made the Insurance Company account for the difference between this $2,500, the amount of the two notes, and the Lashbrook notes; in other words, gave it a lien on these notes for the amount of the Lashbrook notes, and made it account for the balance. The pleadings filed attacking this preference were filed within the six months after the date of the transfer of these notes. The lower court committed no error in this.

Appellant claims, in effect, that it made the exchange with the bank; that it having delivered to the bank notes amounting to $525 for notes amounting to $2,500, it was entitled to them; that its lien on the notes dated back to the time that it received the Lashbrook notes, to-wit, December 14th, 1907, and further, that it also advanced to the bank after the 4th day of February, 1908, other small sums, amounting to more than the value of the two notes; and it ought to be permitted to hold these notes as collateral for it. The pleadings and proof were not

prepared in this case with such view, and there is no claim that the notes were placed in the hands of the Insurance Company with any such purpose.

This court does not feel willing to allow one creditor of a failing debtor to make such an advantageous exchange of property, and not account for it to the other creditors. The lien in such case will commence at the time the property was received.

As stated, W. H. Gregory was president of the Insurance Company, L. W. Key was its treasurer. The company had a large amount of stock that it was endeavoring to dispose of, and on the 28th day of December, each of them executed a note for $9,750 to the Owensboro Savings Bank & Trust Company, and each executed for three hundred shares of the Insurance Company's stock. These notes were placed in the Owensboro Bank & Trust Company, and their proceeds credited to the Insurance Company, and placed on deposit with the bank. These notes were not payable until the 12th day of June, 1908, and made the bank debtor to the Insurance Company in the way of deposits, all told in the sum of about $32,000. The Insurance Company had no security for these additional deposits until the 4th day of February, 1908, when it claims that its president, together with Helm Bruce, its attorney, went to Owensboro and made the following arrangement with the bank, to-wit:

"Owensboro, Kentucky,
"Feby. 4, 1908.

"The Citizens Life Insurance Company has this day received from the Owensboro Savings Bank & Trust Co. two notes each dated Dec. 28, 1907, payable six months after date for $9,750 each, one signed by L. W. Key secured 300 shares of Citizens Life Stock Certs. No. 6980-1-2-3-4 & 5, and one signed by W. H. Gregory secured 300 shares of said stock Certs. No. 6974-5-6-7-8 & 9, which notes and securities have been assigned to said Insurance Company as a pledge to secure its deposits with said bank.

"OWENSBORO SAVINGS BANK & TRUST Co.,
"By JAS. H. PARRISH, Prest.,
"CITIZENS LIFE INS. Co.,
"By W. H. GREGORY, Prest.

"DUPLICATE.

"W. H. Gregory, for the Insurance Company, and James H. Parrish, the president of the bank, who testified for the appellee, both testify that the Key and Greg-

ory notes were delivered over to Gregory for the Insurance Company as collateral security on that day, and that he took them, and that they have not been in the bank since that time.

On the day that the bank assigned, to-wit, the 21st of April, 1908, there appears to have been some conversation between the officers of the bank and the Insurance Company, as the result of which the deposit to the credit of the Insurance Company arising from the proceeds of the notes, and the notes, were balanced on the books of the bank by order of James H. Parrish. Gregory and Parrish swear that the notes were not there upon that day, and Parrish swears that the entry was made from memoranda or checks that he had delivered for the purpose of having the entry made. All that was introduced to militate against the truth of these facts, two or three of the employes of the bank testify that they were under the impression that the notes were present at the bank at the time the entry was made. They would not swear that this was positively true; they admit that what they thought were the notes might have been these memoranda referred to by Parrish. On the one side of this issue we have the absolute, unqualified statements of both the president of the Insurance Company and the president of the bank, that the notes were assigned and actually delivered in pledge to the Insurance Company on February 4, 1908, and were never afterwards in the possession of the bank, and this testimony is supported by a writing executed in duplicate, one being retained by the Insurance Company and one retained by the bank, which corroborates the statement of Gregory and Parrish; and on the other side we have nothing but the statement of the uncertain recollection of certain employes of the bank, giving their impressions. In our opinion the great preponderance of the testimony shows that this transaction actually occurred on the 4th day of February, 1908, and the Insurance Company obtained a pledge of these notes on that day; and the fact that the president of the bank, even with the consent of the Insurance Company, had the books squared or balanced on the day of its assignment, did not have the effect of releasing its lien obtained by the pledge at the date stated. The amendment attacking this transaction was filed September 12th, 1908, more than six months from date of the pledge.

We have been presented with the original statements

written out on the 4th day of February, 1908. It is claimed by appellee's counsel that one of them shows some splotches or blurs, indicating that there has been some tampering with the date; for instance, the figure "4" and "eby" in the date of one of them. In our opinion this criticism is not well taken. Even if it is so as to one of them, there is no pretense that there is any appearance of tampering with the other, its duplicate, which shows the date plainly to be "Feby. 4, 1908."

The judgment of the lower court is affirmed on the cross appeal, and reversed on the appeal, and the cause is remanded for further proceedings consistent with this opinion.