## Husband v. Linehan, et al.

(Decided February 4, 1916.)

Appeal from Madison Circuit Court.

1.   Corporations—Transfer of Stock of—Failure to Register on Books of Corporation—Transfer Governed by the Law of State Where Corporation Created.—The validity of a transfer of stock in a Kentucky corportion made in West Virginia, but attacked in a court of this State, is to be determined by the law of Kentucky.

2.   Corporations—Transfer of Stock of—Not Affected by Failure to Register Transfer on Books of Corporation.—A transfer of stock in a corporation, though not made on the books of the corporation, is valid as between the parties to the contract and also as to an attaching creditor having notice of the transfer before the issual and levy of his attachment.

3.   Corporations—Stock in Not Subject to Attachment at Common Law—Attachment—Right to Purely Statutory.—At common law certificates of stock in a corporation were not subject to attachment. The process of attachment as a remedy in this State, being purely statutory, is governed by sections 203-236, inclusive, Civil Code.

4.   Corporations—Dissolution of—When Valid.—Although dissolution of a corporation is effected without formal notice to the proper official of the State in which it is located, such dissolution is not invalid, if done with the consent of all the stockholders of the

corporation, after provision is made for the payment in full of its debts. One who is neither a stockholder nor creditor of a corporation cannot complain of an arrangement made between such corporation and certain of its stockholders, whereby the latter, preparatory to its dissolution, in consideration of the turning over to them of its assets, paid its debts.

5. Corporations—Negotiable Bonds of—When Not Subject to Attachment.—The negotiable bonds of a corporation cannot be attached where the corporation resides, and the bonds are not. Such bonds, like money or a negotiable note, pass by delivery and can only be attached by actually locating them and serving the attachment upon the person having possession of them.

6. Fraudulent Conveyances—Preferential Transfer of—When Will Not be Set Aside.—A transfer of proprety, though preferential, and, therefore, fraudulent as to creditors, will not pe set aside or held to be an assignment for the benefit of creditors, unless attacked on this ground and within six months from the date of the transfer.

J. A. SULLIVAN and BARCLAY, ORTHWEIN & WALLACE for appellant.

BURNAM & BURNAM for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, J. J. Linehan, and one C. J. Warnock, both residents of Pennsylvania, on January 8, 1909, borrowed from the State Bank & Trust Company, of Rich·mond, Kentucky, $5,000.00, for which they executed their joint and several note, payable three months after date. Collateral security for its payment, consisting of a certificate for fifty shares of stock in the Big Hill Coal Company, issued to Linehan and Warnock jointly, was placed by them with the bank. Warnock died in August, 1909, testate, and his widow, Minnie C. Warnock, qualified as the executrix of his will. The note, which matured before Warnock's death, not having been paid, suit was brought thereon by the State Bank & Trust Company in the Madison circuit court against Linehan, and Warnock's executrix, September 7, 1909. Personal service of summons was obtained on Linehan, but Warnock's executrix was only constructively summoned. The bank recovered in the action a personal judgment against Linehan for $5,000.00, the amount of the note, with interest, and for the enforcement of its lien upon the collateral pledged by the makers as security for its payment; the judgment directing a sale of the fifty shares

of stock in the Big Hill Coal Company for the debt. The master commissioner sold the fifty shares of stock May 28, 1910, as directed by the judgment, and the bank became the purchaser at the price of $1,975.00, which sum was credited on the judgment. An execution later issued for the balance due on the judgment and was returned unsatisfied.

On July 6, 1910, the State Bank & Trust Company instituted a second action in the Madison circuit court against Linehan and Warnock's executrix, seeking to enforce the payment of the balance due on its judgment obtained in the first action; it being alleged in the petition that Linehan owned 625 shares of stock in and $3,100.00 of the bonds of the Wallsend Coal & Coke Company—a Kentucky corporation—which, by reason of the non-residence and insolvency of Linehan, should be subjected to the bank's judgment. To this end the bank caused an attachment to be issued, which was attempted to be levied on the stock and bonds in question by delivering a copy thereof, by way of process of garnishment, to the Wallsend Coal & Coke Company. Linehan and Warnock's executrix were only constructively summoned in this action. The court seems to have adjudged in this case that the State Bank & Trust Company was entitled to a lien on the 625 shares of stock in and $3,100.00 of the bonds of the Wallsend Coal & Coke Company described in the petition, for the payment of the balance due on its judgment against Linehan, which it directed its master commissioner to sell for the purpose of discharging the unpaid balance of its judgment. The commissioner advertised the sale of the stock and bonds for December 29, 1910, but before the sale the State Bank & Trust Company sold and assigned, in writing, all its interest in the unpaid judgment and all of its rights and equities acquired in the second action to the appellant, F. M. Husband. After his purchase of the judgment mentioned appellant discontinued the proceeding for the sale of the stock and bonds by the master commissioner and same were never sold by the latter.

Matters remained in this condition until May 17, 1911, on which date F. M. Husband instituted in the Madison circuit court, against Linehan and the Wallsend Coal & Coke Company the present action, stating in the petition the facts involved and steps taken in the two actions brought by the State Bank & Trust Company first men-

tioned; his purchase of the unpaid part of the judgments and alleged lien obtained by the bank on the 625 shares of stock in and $3,100.00 of the bonds of the Wallsend Coal & Coke Company in the second action; and further, that the Wallsend Coal & Coke Company had contracted to sell and was then about to convey all of its property to another corporation and dissolve. Linehan was proceeded against in this case as a non-resident and an injunction was sought therein by Husband against the Wallsend Coal & Coke Company to prevent any payment by it to Linehan on or for his stocks and bonds; and on May 19, 1911, Husband caused to be issued in the action an attachment against the property and effects of Linehan, including the stocks and bonds in question, which was shortly thereafter executed on the Wallsend Coal & Coke Company, which was also summoned to answer as garnishee.

The Wallsend Coal & Coke Company, answering as garnishee, in substance, alleged that on the date of the service of the attachment and for some time prior to the institution of the action, Linehan held, as shown by its books, 625 shares of its capital stock, of the par value of ten dollars a share; that on each of the certificates of stock there appeared the following printed statement: "Transferable only on the books of the corporation by the holder hereof in person, or by attorney, upon surrender of this certificate properly endorsed," and that this stock had not, to its knowledge, been sold or assigned. That at the time the attachment was served Linehan owned, as shown by its books, certain of its bonds to the amount and value of $3,100.00, exclusive of unmatured coupons; and finally, that it, the Wallsend Coal & Coke Company, had no interest in the litigation and had sold all of its property and assets to a corporation known as the New Continental Coal Company, with a view to going out of business, and that the latter company had paid a part of the agreed consideration on such purchase.

After the filing of the answer of the Wallsend Coal & Coke Company, on the motion of the plaintiff, Husband, an order was entered by the circuit court requiring the defendant, Wallsend Coal & Coke Company, to hold enough of the purchase price of its property and assets to satisfy any judgment that might be awarded against Linehan or it in the case. Linehan filed an

answer in which he denied the right of Husband to subject to the payment of the judgment assigned him by the State Bank & Trust Company the stock in or bonds of the Wallsend Coal & Coke Company described in the petition; admitting, however, that he (Linehan) was at one time the owner of the stock and bonds, but alleging that before the institution, on July 6, 1910, of the second action brought by the State Bank & Trust Company against him and others, he had sold and delivered the stock and bonds to John B. Garden and others, whereby the latter became the owners of all the right, title and interest he had in and to same.

Shortly after the filing of Linehan's answer, the appellees, J. B. Garden, Richard Robertson, C. W. Welty, George E. House and Samuel Noyes filed an intervening petition and by virtue thereof were made defendants to the action. In the intervening petition they, in substance, alleged that they were all residents and citizens of West Virginia; that they became the owners of the stock and bonds in controversy by their purchase from Linehan and assignment and delivery thereof by him to them in October, 1909, such purchase having been made in due course and for value, and that Husband knew of their purchase thereof "prior to his alleged purchase of the judgment of the State Bank & Trust Company." Subsequently the interveners filed an amended petition, in which they withdrew so much of the original petition as alleged that the certificates of stock and bonds of the Wallsend Coal & Coke Company sought to be subjected by Husband, as the property of Linehan, to the payment of his judgment, were purchased by them in October, 1909, and alleged that their purchase of the stock and bonds from Linehan was made "between the first of August, 1909, and 31st of October, 1909;" and further, that at the time of such purchase Linehan was owing $28,000.00 to the Frozen Creek Lumber Company, a corporation of West Virginia, in which the interveners were stockholders and officers and which had shortly theretofore dissolved and quit business, but in doing so, by consent of all its stockholders, sold and delivered to the interveners all its assets, including the $28,000.00 claim on Linehan, in consideration of their agreeing to assume and pay all the corporation debts; and that in August, September or October, 1909, Linehan sold, assigned and delivered to them the stock and bonds in

satisfaction *pro tanto* of his indebtedness to the Frozen Creek Lumber Company; and that they allowed him therefor $9,350.00, which was credited on the $28,000.00 claim against him they received from the Frozen Creek Lumber Company.

The affirmative matter of the answer of Linehan and of the original and amended petitions of Garden and others was controverted of record by a consent order of the circuit court. Following the taking of evidence and submission of the case the circuit court, by the judgment rendered, dismissed the plaintiff's petition, declared appellees, the interveners, to be the legal owners of the stock and bonds in controversy, and awarded the latter their costs. From that judgment Husband has appealed.

Appellant asks a reversal of the judgment upon the following grounds: (1) That the transaction had by Linehan with the interveners was no sale at all; (2) that the transaction was at most only an attempted preference, was fraudulent, and, therefore, is void as against the alleged attachment lien; (3) that the transaction being a foreign, partial assignment by a debtor to certain of his creditors of a portion of his estate, will not be given effect in Kentucky, because to do so would result in detriment to a local creditor; and because, also, a recognition of same would not be in accord with the spirit or policy of the laws of the latter State.

As to the first proposition advanced, it may be remarked that whatever may have been the character of the transaction by which the interveners, Garden and others, claimed to have acquired, by purchase from Linehan, ownership of the 625 shares of stock in and $3,100.00 of the bonds of the Wallsend Coal & Coke Company, it conclusively appears from the evidence that such transaction occurred prior to the institution of the second action by the State Bank & Trust Company, in which it was first attempted to subject to the payment of its judgment these stocks and bonds, also prior to appellant's purchase of the judgment rendered therein. This is shown by the depositions of Garden, House and Noyes, three of the interveners, and the appellee, J. J. Linehan.

Although both Linehan and the executrix of Warnock were non-residents and only constructively summoned in the second action brought against them by the State Bank & Trust Company, the circuit court, despite the

requirement of section 126, sub-section 3, Civil Code, that allegations against a defendant constructively summoned must be proved, rendered therein a default judgment sustaining the attachment as to all the stocks and bonds alleged to be the property of Linehan. But as Linehan did not appeal from that judgment the error will not be reviewed.

The testimony of the appellees, Garden, House and Noyes, is to the effect, that prior to 1909 they and their co-interveners, Robertson and Welty, constituted all the stockholders of a corporation known as the Frozen Creek Lumber Company; that Linehan, as a lumber dealer in Pittsburg, Pennsylvania, had become indebted to the Frozen Creek Lumber Company to the amount of $28,000.00; that the latter company went out of business prior to 1909, and that the interveners, as individuals, had paid all of its debts and taken over to themselves its assets, among which assets was the claim against Linehan; that in the fall of 1909 and more than a year before the institution of the action by the State Bank & Trust Company to subject to the payment of its judgment the stock in and bonds of the Wallsend Coal & Coke Company, therein alleged to be owned by Linehan, they, the interveners, in endeavoring to obtain from Linehan the payment of the claim they held against him and to enable him, so far as he could, to pay same, purchased of him the stock and bonds in question, and such stock and bonds were then received by them of Linehan, by his endorsement and delivery thereof, in discharge *pro tanto* of his indebtedness to them; and that by such endorsement and delivery of the stock and bonds they became the owners thereof and have ever since had possession of them.

It also appears from the testimony of J. B. Garden and S. M. Noyes that before F. M. Husband purchased from the State Bank & Trust Company the judgment against Linehan, certain conferences were held between them and the appellant, F. M. Husband, the latter's brother, John Husband, being present at the time and assisting him, in which both were advised that appellees, the interveners, were the owners of the stock and bonds; and such information on the part of F. M. Husband before his purchase of the judgment is further shown by certain letters that passed between him or his brother John and S. M. Noyes, one of the interveners. These

letters also show that the purchase by Husband of the judgment from the bank was for the purpose of protecting 1,575 shares of stock held by C. J. Warnock's executrix in the Wallsend Coal & Coke Company, which the bank claimed to have attached in the action of July 6, 1910, brought by it.

The only contradiction attempted of the evidence referred to was furnished by certain letters from Linehan to Mrs. Warnock, executrix, with respect to the business of the Wallsend Coal & Coke Company, and meetings to be held to consider this business. It will be found, however, that these letters of Linehan are not contradictory of his having made the sale of the stock and bonds to appellees, Garden and others, interveners. They were written prior to the institution of the second action by the bank and contain no claim that he was then the owner of the stock or bonds.

In view of what has been said of the testimony we think it safe to say that it shows beyond doubt the *bona fides* of the transaction between Linehan and the interveners; in other words, that there was a sale in good faith by the former to the latter of the stock in and bonds of the Wallsend Coal & Coke Company owned by him, attended by the endorsement and delivery of same; and that such sale passed to the interveners the title to the stock and bonds, which must have the legal effect to defeat the attachment of appellant unless, as contended by his counsel, the sale of both the stock and bonds was a fraudulent preference.

If the evidence here could be regarded sufficient to establish such fraudulent preference, it is manifestly too late for the transfer of the stock and bonds to be successfully attacked by appellant. An action for that purpose must be brought within six months of the date of the preferential transaction. Kentucky Statutes, section 1911; Citizens' Life Ins. Co. v. Owensboro Savings & Trust Co., 146 Ky., 118; Turner v. Farmers' Bank, 148 Ky., 692; Gransberry, et al. v. Pierce, et al., 151 Ky., 795. Such attack is not made by the petition in this case, nor was it made in either of the actions instituted by the State Bank & Trust Company against Linehan and others, and as more than six months elapsed between the sale and transfer of the stock and bonds and the institution of the second action of the bank by the attachment and judgment in which appellant claims to have

acquired a lien on the stock and bonds transferred, it is now immune from such attack.

What has been said equally applies to appellant's contention that the failure of appellees, Garden and others, to cause the stock certificates to be transferred to them on the books of the Wallsend Coal & Coke Company, as provided by the writing on the back of each, prevented the title to the stock from passing to them. In this jurisdiction the validity of the sale and transfer in good faith of stock in a corporation cannot be attached by a creditor, by virtue of an attachment levied after such transfer was made, on the ground that the transfer of the stock was not made on the books of the corporation; it being held that this provision is mainly for the benefit of the corporation, and to enable it to identify the holders of its stock. As between the parties to the contract the question of title cannot be affected by the non-appearance of the transfer on the books of the corporation. Bushnell v. Hall, 9 R., 684; Thurber v. Crump, 86 Ky., 408; American Wire Nail Co. v. Bayless, 91 Ky., 94. It is true the sale and transfer took place in West Virginia, but that fact does not, as claimed by appellant, make it necessary for its validity to be tested by the law of that State. As neither the common law of that State nor any statute thereof that would make the transfer invalid, was pleaded or proved by the appellant, its validity must be determined by the laws of Kentucky. This is also true as to such rights, if any, as may be asserted by appellant on account of the attachment in this case. At the common law stock in a corporation is not subject to attachment, for which reason there is no common law on the subject. Cook on Corporations, vol. 2, 481; Lipscomb v. Condron, 56 W. Va., 416, 57 L. R. A., 670. The right to attach stock, as here attempted, is a remedy given by the Civil Code of this State (sections 202-236, inclusive), and necessarily the remedy and all rights incident thereto must be governed by the laws of this State. Bowman v. Breyfogle, 145 Ky., 443. Moreover, it is a well recognized rule that the method of transferring stock in a corporation is governed by the law of the State under which it was incorporated, although the transfer is made in another State. 10 Cyc., 593; Horton v. Sherrill-Russell Lbr. Co., 147 Ky., 226; Masury v. Arkansas Nat'l Bank, 83 Fed., 381; Yellow Poplar Lbr. Co. v. Ford, 141 Ky., 5.

We think it will be found, however, that the law of West Virginia with respect to the sale of stock in a corporation and the manner of effecting its transfer, is the same as the law of Kentucky. Thus, in Lipscomb v. Condron, *supra*, it is said:

"Where there is no statute expressly or impliedly forbidding a sale of stock without registration, it is generally, if not universally, held that the purchaser takes the legal title without a transfer of the stock on the books. Even in those jurisdictions in which the statute declares that the stocks shall be transferable only on the books of the corporation it is held that an unregistered transfer or assignment gives the purchaser a perfect equitable title as between him and the assignor and any person claiming under the latter."

As the contentions of appellant with reference to the sale and transfer from Linehan to appellees apply only to the stock, further discussion as to the validity of the sale and transfer of the bonds is unnecessary, except to say that it seems well settled that an attachment cannot be levied upon negotiable, mortgage, coupon bonds, or a lien acquired thereon by process of garnishment served upon the corporation owing but not holding them. The corporation is not the custodian of the bonds, and the bonds here involved were not in the possession of the Wallsend Coal & Coke Company when the attachment of appellant was served upon it. Such bonds, like a negotiable note or money, pass by delivery and can only be attached by actually locating them and serving the attachment upon the person having possession of them. In Cook on Corporations, 5th Ed., vol. 3, section 765, it is said:

"Bonds after issue may be taxable, attachment may be levied on them at the place where they actually are, although not at the place where the corporation is and they are not. * * * Negotiable bonds held outside of the jurisdiction of the court cannot be attached by serving the attachment on the corporation which issued the bonds. Von Hesse v. McKay, 55 Hun., 365; affirmed, 121 N. Y., 694. The garnishee process does not lie against a non-resident company on bonds, since the debtor may have sold them. Junction R. R. Co. v. Mc-Cleneray, 13 Ind., 161."

We discover no merit in appellant's final contention that the evidence shows the Frozen Creek Lumber Com-

pany to be the legal owner of the stock and bonds in question, and that it fails to show that that corporation has been legally dissolved. The latter proposition is attempted to be sustained by a certificate from the Secretary of State of West Virginia, appearing in the record, in which it is stated that his record does not show that the corporation had been dissolved. This certificate, in our opinion, does not militate against the contention of appellees that the corporation had been dissolved. The notice of such dissolution required to be given the Secretary of State is doubtless for the benefit of the public, as, like any other record, it would presumptively inform everybody that the corporation no longer existed as such. But this does not show that the corporation, though not formally dissolved according to the law of that State, had not gone out of business. It may be conceded that a corporation cannot quit business and distribute its assets among the stockholders without paying its debts, or without making the stockholders receiving such assets liable for such debts, but in this case it clearly appears from the evidence that the Frozen Creek Lumber Company had in fact gone out of business before the settlement was made between appellee and Linehan, whereby the former became the owners of the latter's stock in and bonds of the Wallsend Coal & Coke Company; that appellees had prior thereto assumed and paid the debts of the defunct corporation and with the consent of the stockholders received from it all its assets, including its debt of $28,000.00 against Linehan, to reimburse them for the sums they expended in discharging the debts of the corporation. It is not made to appear that any creditor of the Frozen Creek Lumber Company is complaining of the arrangement referred to, and certainly appellant, who is not a creditor, cannot complain thereof. We see in the transaction nothing to invalidate the title of appellees to the stock and bonds sold and transferred them by Linehan. In sustaining the validity of the transfer of the stock and bonds made in West Virginia, we do not violate the public policy of this State.

As we concur in the conclusions reached by the circuit court, the judgment is affirmed.