Coös,
May 2, 1933.

OSCAR A. DUPONT *v.* HUGH K. MOORE.

*Edmund Sullivan, Crawford D. Hening, Ovide J. Coulombe* and *Dupont & Laforce (Messrs. Sullivan* and *Hening* orally), for the plaintiff.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the defendant.

ALLEN, J. The reasons for the receivership sought by the defendant are not fully set forth in the record. Protection of the property of others kept by him in the box at the bank appears to be one. No claim is made, however, of any admission on his part thereby that the stocks in the box were validly attached or subject to the trustee-process, and no point is taken that the plaintiff gained any rights by the defendant's course of action. The plaintiff's bill advances two positions. One is its maintenance to make the attachment or trustee-process operative and effective to hold the stocks, and one is its maintenance independently thereof and solely as an aid to the action at law.

The bill is not sustainable upon the latter proposition. A creditor's bill must be predicated upon a specific attachment lien or upon a

judgment, with the possible exception of certain special cases where it is sought to reach property transferred or under threat of transfer in fraud of creditors. The bill here alleges no more than the possibility of the defendant's fraudulent purpose to defeat his creditors. The statement of the principle in *Tappan* v. *Evans*, 11 N. H. 311, 327, has been consistently followed without enlargement, unless under special circumstances of fraud not here claimed. *Stevens* v. *Williams,* 12 N. H. 246; *Abbott* v. *Tenney*, 18 N. H. 109; *Stone* v. *Anderson*, 26 N. H. 506, 516-518; *Wilson* v. *Towle*, 36 N. H. 129, 139; *Bay State &c. Co.* v. *Goodall*, 39 N. H. 223, 228, 229; *Hill* v. *McIntire*, 39 N. H. 410, 412, 413; *Sheafe* v. *Sheafe*, 40 N. H. 516, 518; *Treadwell* v. *Brown*, 43 N. H. 290, 291; *Chase* v. *Searles*, 45 N. H. 511; *Moore* v. *Kidder*, 55 N. H. 488; *Towle* v. *Janvrin*, 61 N. H. 605; *Thompson* v. *Esty*, 69 N. H. 55, 73; *Wilson* v. *McCarroll*, 80 N. H. 580, 581, 582. The case last cited does not extend the doctrine. It held a specific attachment lien, to be a requisite for the maintenance of the bill. It follows that only if the stocks were validly attached or held by the trustee-process may equity take and control them while the action is pending.

In its direction especially to attach the securities in the defendant's box in the bank the writ clearly negatived any purpose that they be held under the trustee-process served on the bank. It commanded their direct attachment in addition to and independently of the trustee-process, and thus clearly showed that the process excepted the securities in the box from being held under it. The trustee was in effect notified that it was not to be chargeable for them.

The return of the writ shows the adoption of this construction. It states service on the trustee and also an attempted attachment of the securities. While the attachment was void for reasons to be stated, it was clearly the officer's purpose to attach and thus exclude the securities from the operation of the trustee-process. How he thought the attachment was made by serving a copy of the writ on the trustee is not clear, but in leaving a copy with the city clerk he evidently had in mind the statute (P. L., c. 332, s. 23) permitting a special method of attaching "live stock or articles which, by reason of their size, situation, fluidity, explosive or inflammable qualities, are incapable of being conveniently taken into actual possession."

Regardless of the issue to be later considered whether certificates of stock may be attached, the attachment was void for a number of reasons. The return shows no attachment by actual or constructive possession. There must be such an attachment, followed by serving a copy of the writ with a return of the attachment endorsed as the

statute prescribes upon the town or city clerk, to preserve the attachment. *Scott* v. *Manchester &c. Works,* 44 N. H. 507, 508; *Bryant* v. *Osgood,* 52 N. H. 182, 185. Nor, it would seem, was the return sufficiently descriptive of the property undertaken to be attached. *Bryant* v. *Osgood, supra,* 186. If the officer might attach the securities, his right to gain access to the box to obtain and take possession of them follows. Otherwise there would be no attachment. If he may thus attach, he is enabled to make a return substantially identifying the property taken. Inability adequately to describe must signify inability or failure to attach. Inconvenience of taking actual possession does not dispense with reasonable identification.

If the failure to attach might be overcome, even then the attachment was not preserved. The statute under which the officer proceeded relates only to certain forms of tangible personalty. The successive enactments of the statute from R. S., c. 184, s. 14, (C. S., c. 195, s. 16; G. S., c. 205, s. 16; G. L., c. 224, s. 16; P. S., c. 220, s. 16; Laws 1905, c. 43) to its present form in P. L., c. 332, s. 23, are too clear to this effect to admit of discussion. And it is futile to assign any character of tangible personalty to stock certificates, and especially to such limited kinds of tangibles as the statute embraces.

In summary, the writ contemplated no inclusion of the stocks within the trustee-process it commanded, no attachment of them was made or preserved, and the plaintiff's bill is without merit. The temporary receiver should be ordered forthwith to deliver the certificates to the defendant.

The result leaves undertermined the main issues of contention between the parties. As they have been argued and may be presented under an application for additional attachment under P. L., c. 332, s. 58, it is thought advisable to pass upon them, so far as necessary in connection with such an application. See *Wilson* v. *McCarroll,* 80 N. H. 580.

The subjection of the contents of a safety deposit box to *mesne* attachment depends upon two factors. One is of their general liability to attachment and the other relates to the character of the contents. If the contents may in general be attached, particular items of the contents may not be. Only "property, real and personal, which is liable to be taken in execution" (P. L., c. 332, s. 1) may be directly attached by *mesne* process.

By P. L., c. 344, s. 15, shares in a corporation may be taken on execution "in the same manner that they may be attached." By P. L., c. 332, s. 18, they are attachable in *mesne* process. But the

corporation must be a local one. The original statute enacted in 1812 (Laws of N. H., v. 8, *p.* 162) expressly applies only to shares in a corporation "which has been, or may hereafter be incorporated by the legislature of this State." An amending act of 1825 (Laws of N. H., v. 9, *p.* 464) also refers to the shares as those "in any corporation established by the laws of the State." Furthermore, the provisions of the statute in its original form and in all its succeeding enactments are adapted to reach stock in local corporations only. They direct service upon certain officers and agents of the corporation and call for certain things to be done by them. To give them scope of application to foreign corporations would be to exceed jurisdictional authority. These considerations of origin and adaptation make clear the limitation of the statute to local corporations.

There being no legislation for the attachment of stocks in foreign corporations, such stocks are neither attachable nor subject to levy. It thus becomes unnecessary to pass upon the right to attach other contents of a safety deposit box. Stocks in a foreign corporation not being subject to attachment, it is of no consequence where the stock certificates are kept.

In respect to trustee-process, it holds the trustee chargeable for the "money, goods, chattels, rights or credits of the defendant, not exempted," which the trustee may have "in his possession." P. L., c. 356, s. 19. "If the trustee is adjudged chargeable for any promissory note or other security for the payment of money, or any chose in action upon which an execution cannot be levied, the court may appoint a receiver to collect it." *Ib.,* s. 29. It is well settled that a custodian of the defendant's evidential forms of his *choses in action* may be thereunder held, although he may have no claim against them or any interest in them except as such custodian. *Young* v. *Ross,* 31 N. H. 201; *Fling* v. *Goodall,* 40 N. H. 208; *Wheeler* v. *Emerson,* 45 N. H. 526; *Musgrove* v. *Goss,* 75 N. H. 208. Shares of stock are property in the nature of *choses in action* (*Champollion* v. *Corbin,* 71 N. H. 78, 81; *Adams* v. *Thayer,* 85 N. H. 177, 185), and no reason is perceived why, with the possible exception of stocks in local corporations as to which the method of attachment specially prescribed has been referred to, they are not within the definition of the term as it is used in the cited section (29) of the trustee-process statute.

The inquiry thus is presented whether a rented safety deposit box in a bank or its contents are in the bank's possession within the meaning of possession as the word is employed in the statute. In respect to *choses in action*, if the bank has possession, it is of the papers and

writings constituting the evidence of them. But that is sufficient. One may be a bailee of another's intangibles only as he holds the evidence of them, and the purpose of the statute to reach them through their evidence in his hands is not doubtful. Is the bank in possession of the evidence, is therefore the subsidiary inquiry.

The question of situs is not here important. The stockholder's domicile here gives him his ownership here, and that ownership is subject to local control. Upon his decease the stock would be part of his estate subject to local administration, if in addition ancillary administration may be required in the jurisdiction where the corporation is chartered. When the receiver appointed pursuant to the trustee-process statute sells stock in a foreign corporation, difficulties of the purchaser in becoming a registered stockholder are not of direct local concern. By the sale the defendant's ownership is divested by force of local law and transferred to the purchaser. The reasoning in *Westminster Nat. Bank* v. *New England &c. Works,* 73 N. H. 465, is in point. The owner's rights subject to local control are taken from him, and by the local control over him he may at least be barred from asserting any claim of ownership and be required to admit the purchaser's claim to be valid against him.

In its ordinary as well as legal meaning, possession is control, custody and charge. It implies a purpose and capacity to exercise corporal contact, to the exclusion of others. There must be the physical possibility of dealing with the thing as the possessor likes, and for him to be alone in its use and enjoyment. When possession is shared by a number of persons, they together form the exclusive possessory interest. As between bailor and bailee, the owner parts with possession with stipulated or other rights for restoration.

Under this test of possession cases holding that a bank is a bailee of a rented deposit box and its contents seem ill considered and to disregard the plain facts. They confuse control and access with the avenue thereto. In one case it is said there is no magic in two keys. But a key is a symbol of authority because it is an instrument of control. The usual arrangement for keys in opening the compartment in which a box at a bank rests is a real, practical and sensible one in furtherance of the user's possession. The key kept by the bank goes with its other devices and outfit to guard and protect that possession. They strengthen and secure the user's ability to exclude others. At the same time they denote no custody or control of the box. The right of corporal contact is denied. The user's lock to which he has the key effectually bars the bank from access.

The user's engagement of physical devices and service to secure his exclusive right of access operates to hold his possession within the bank's possession of the surroundings of the box, but this is not incompatible with the ordinary or legal conception of the user's sole possession. An owner of land reached by a right of way over another's land is in exclusive possession of it. He does not lose it merely if the way is barred by the latter. One who rents his building reserving a room kept under lock and key remains the exclusive occupant of the room, although he keeps no key to the building. A lessee of an apartment or office in a building to which the owner retains control of the entrances is in possession of the leased space, even if he may reach it only by elevators run by the owner's servants or may enter the building only by passing a porter's guard. And there would be no loss or lessening of possession if the owner had a key to the apartment or office for entrance for certain purposes incidental to the lease. If physical control is not absolute in such cases, its exclusiveness is enhanced. The mere fact of hiring the service or property of others to maintain and secure possession does not destroy or impair it, and much less does it transfer possession to the person hired. If the user's control over his box is partly dependent upon the free exercise of his right of access to it, interference with the right does not put the bank in possession. Only by the wrong of breaking into the compartment of the box may the bank, lacking the user's consent, obtain possession. And for the bank thus to take possession is as wrongful as for it to break into the user's office and take whatever is found there. If in some situations the exclusion from possession may amount to taking possession, the loss of access to a bank box is not one of them. The circumstantial arrangements are such as to preclude it as a fact. And in any view, until the right of access is disturbed, there is no disturbance interfering with the user's possession.

Whatever may be thought of a bank's possession of the contents of a sealed package entrusted to it for safe-keeping, the notion that it has possession of the contents of a box which have never come into its hands and of which it is in blank ignorance, and when it has physically barred itself from access to and control over the box, rests upon theories which defy the essential and practical realities and validities of possession.

One who may not personally delegate his duty of safe-keeping another's papers does not violate his trust by reposing them in his bank box. Rather, he more effectually discharges his obligation than by keeping them in his own less secure facilities.

At common law a bailee cannot commit larceny of the goods bailed. It seems absurd to say that the owner of a deposit box rented by him would not be guilty of larceny if he broke into it and appropriated its contents. Distinctions between such a case and one of breaking into and taking the contents of the user's safe in his own premises seem of doubtful validity under common-law rules. Unless the contents of a bank box are "entrusted for keeping" (P. L., c. 389, s. 8) to the bank, it could not be guilty of statutory larceny as a bailee. The reality is that neither an entrustment nor a keeping is given to the bank. All the user receives is protection for his own keeping.

The view in some cases that the bank is in possession of a user's box and its contents is in part due to a confusion between the law of bailments and its analogies. The general duties of bailees have been applied to renters of boxes, in their similarity of situation in certain aspects. The duty of safe-guarding access to another's property and that of its proper custody rest on the common rule of due care. The general conduct called for in each situation is in many respects the same, in protection from injury and intrusion. The conclusion has followed that the law of bailments is imposed upon the bank in its rental of boxes. But because that law is reasonably to be extended to the relation, the relation is not thereby made one of bailment either in fact or in law.

The general policy to secure and obtain payment of a debtor's liabilities by attachment and levy is definite. It extends so far as to subject a defendant's property to attachment regardless of merit in the cause of action against him. There is, however, some recognition of difference between an ordinary plaintiff and a judgment creditor. The former may not usually, but the latter always may, bring a creditor's bill to reach assets not subject to levy when the judgment otherwise will be unsatisfied. P. L., c. 317, s. 7. The legislature has not seen fit to give a plaintiff before he obtains judgment the right to injunctive relief against the disposal of such assets, and the argument of a policy which gives security without exception while an action is pending must fail. Trustee-process reaches property not subject to ordinary attachment and levy, but no policy demanding a construction of the terms of the statute beyond their import and meaning in both their ordinary and legal acceptance is disclosed. The established principles of construction are to be adopted. The legislation establishing trustee-process was first enacted before the rented deposit box was a much known affair. While legislation is applicable and adaptable to situations afterwards arising, they must come within

its "general purview and scope." *Haselton* v. *Company*, 82 N. H. 327, 332. If the new situation is not thus embraced, the legislation does not regulate or affect it.

Trustee-process is designed to reach certain obligations of the trustee to the defendant. The obligations are subject to the law's interposition. A bailee's obligation to restore the thing bailed to the owner may become incapable of performance by force of the process. But the bank's obligation to permit the user of a box to have access to it is not the sort of an obligation which the process may reach. It is not a right or thing in the trustee's possession belonging to the defendant, nor is it a debt of the trustee owed the defendant. It is a duty incidental to the hiring of the box, with which it is inseparably connected. It is not an additional right to the hiring but is a part of the hiring. Service of process on the trustee, therefore, does not impose on it any duty enjoining it from performing its duty to the user of the box in permitting him to exercise his right of access.

The statute contemplates that the trustee is in a position to turn over to the receiver the evidence of the *choses in action* kept by it for the defendant. It is not contemplated that it may break into the space occupied by the box and then break into the box, examine its contents and deliver to the receiver the evidence if any is found. This would be to take possession of what is not in its possession.

The statute also charges a bailee for the value of chattels or money in his hands belonging to the defendant. If a bank is trusteed in an action against the user of a box, the theory that it is in possession of the box would require it to open the box to ascertain if the contents include any chattels or money and to take them if found, meanwhile barring the user from access. Here the result would be to break and enter to gain control of what is already possessed.

The policy of *mesne* attachment is to be adjusted to other policies. If in general it prevails over them, it does not completely suppress them. In recognition of the principle that the institution of an action implies no merit in it the legislature has arranged various devices for modifying and lessening the hardship an attachment often produces. An officer may not break into a defendant's home to attach or levy upon property therein. Many items of property are exempt from both attachment and levy. In ascertaining the legislative will notice is to be taken of conflicting policies. To carry a policy to extremes without such notice is to go beyond the legislation. To give possession the meaning the plaintiff would ascribe to it would enlarge the area of trustee-process beyond any expressed purpose of the legis-

lature as determined by ordinary methods of construction. There being no such expression, the plaintiff's claim fails.

The right of a judgment creditor to bring a bill to reach the debtor's stocks in foreign corporations is in no wise hereby impaired.

*Case discharged.*

All concurred.

On May 1, 1933, Mr. Peter Woodbury was appointed an associate justice of this court to fill the vacancy occasioned by the retirement of Mr. Justice Snow and took his seat upon the bench at the May session, 1933.