SALMON *v.* MOORE, EXECUTOR, ETC.

No. 41432          March 21, 1960          118 So. 2d 867

*John F. Keeton,* Grenada, for appellant.

*Marshall Perry,* Grenada, for appellees.

GILLESPIE, J.

Mrs. Willie E. Smith, a resident of Grenada County, Mississippi, died testate in June, 1958. The beneficiaries under her will are the appellants here and are referred

to as the Smith beneficiaries. After her death the executor of Mrs. Smith's estate found in her bank lock box eleven certificates of corporate stock, all issued in the name of Mattie Evans, a sister of Mrs. Smith who lived in Hot Springs, Arkansas. Each of these certificates of stock had been endorsed in blank by Miss Evans. Several of the endorsements were witnessed by Mrs. Smith. Some of the endorsements were dated about two years before Mrs. Smith died. None of the certificates had ever been submitted by Mrs. Smith to the issuing corporations to be reissued in Mrs. Smith's name. Mrs. Smith sent dividends, received at her address, to Miss Evans from the time the stocks were endorsed until Mrs. Smith died. The certificates of stock were contained in two unsealed envelopes in Mrs. Smith's lock box, and on each envelope in the handwriting of Mrs. Smith were the words, "Property of Mattie Evans." Miss Evans had been in feeble mental condition for some years before the death of Mrs. Smith. Mrs. Smith had been a bank employee. The permissible inference was that Miss Evans entrusted her certificates of stock to Mrs. Smith for assistance in handling and for sale in the event it was needful to do so, and that the certificates were endorsed to facilitate such matters.

After Mrs. Smith died in June 1958, and on August 1, 1958, Miss Evans died testate and her will was probated in Hot Springs, Arkansas.

An issue was made up in the estate proceedings of the Smith estate to determine ownership of the certificates of stock. The beneficiaries under the Smith will contended that the certificates were the property of Mrs. Smith at the time of her death. The executor of the Evans' estate and the beneficiary under the Evans' will contended that Miss Evans owned the certificates.

The chancellor rendered an able opinion in which he analyzed the evidence and found that Miss Evans had not parted with title to the certificates of

stock and that they were her property when Mrs. Smith died. He based his finding of fact on the ground that the following facts were inconsistent with an intention on the part of Miss Evans to divest herself of title: (1) Several of the endorsements on the certificates were witnessed by Mrs. Smith; (2) the certificates remained in Mrs. Smith's possession, some of them for about two years, without being submitted by Mrs. Smith for reissuance in her name; (3) the dividends payable to Miss Evans were mailed to Mrs. Smith's address and were sent to Miss Evans by Mrs. Smith until Mrs. Smith died, and (4) the certificates were kept in Mrs. Smith's lock box in two envelopes on which Mrs. Smith had written, "Property of Mattie Evans."

The chancellor was amply supported by the proof in his finding that Miss Evans never intended to part with title to the stock certificates and that Mrs. Smith recognized the title of Miss Evans.

Appellants, the beneficiaries under the Smith will, contend that under the Uniform Stock Transfer Act, Section 5359-01, et seq., Mississippi Code of 1942, the possession of the certificates by Mrs. Smith with Miss Evans' endorsements thereon in blank constituted a complete and valid transfer of title.

The Uniform Stock Transfer Act was enacted in this State in 1946 as Chapter 222, Laws of 1946. The Act was titled, "An Act to make uniform the law for transfer of shares of stock in a corporation." We have no decisions construing the Act. A helpful collection of cases from other states construing identical or similar acts is found in Uniform Laws Annotated, Volume 6. In addition to the matter of uniformity, the main purposes of the Uniform Stock Transfer Act are: (1) To make certificates of stock stand as the physical representative of the stock itself to the fullest extent possible, and not as mere evidence of stock. Mills v. Jacobs, 333 Pa. 231, 4 A. 2d 152; Fuller v. Ostruske, 48 Wash. 2d 802, 296 P.

2d 996; Lockhart v. Dickey, 161 La. 282, 108 So. 483; Leff v. N. Kaufman's Inc., 1941, 342 Pa. 342, 20 A. 2d 786, 139 A. L. R. 267; Haughey v. Haughey, 1943, 305 Mich. 356, 9 N. W. 2d 575; Hodes v. Hodes, 1945, 155 P. 2d 564; Snyder Motor Co. v. Universal Credit Co., 1947, 199 S. W. 2d 792. (2) To give to certificates of stock certain characteristics of negotiable paper so as to facilitate the transfer of stock and to make good the title of one who, in good faith, for value without notice of any adverse interests, purchases a stock certificate bearing the endorsement in blank of the registered owner. Krizanek v. Smith (Del.), 87 A. 2d 871; Chatz v. Midco Oil Corp. (C. C. A., Ill.), 152 F. 2d 153; United States Gypsum Co. v. Faroll (Ill.), 15 N. E. 2d 888.

When Miss Evans entrusted Mrs. Smith with the certificates of stock with the former's endorsement thereon in blank, Mrs Smith was clothed with such indicia of ownership under the Uniform Stock Transfer Act that an unauthorized sale of such certificates to an innocent purchaser for value would have bound Miss Evans as between her and the innocent purchaser. There are no innocent purchasers involved in this case. The Act does not determine any right as between a transferor and a transferee of certificates of stock where no innocent purchaser is involved. The Act does not purport to make bare possession of the certificate endorsed in blank legal ownership for all purposes. Leff v. Kaufman's (Pa.), 20 A. 2d 786. Equities in favor of the transferor are undisturbed by the Act save where the rights of innocent purchasers intervene. Cf. Conrad v. Olds (Ind.), 37 N. E. 2d 297; Fardy v. Mayerstein (Ind.), 47 N. E. 2d 315; Manna v. Pirozzi (N. J.), 130 A. 2d 55.

We conclude that the Uniform Stock Transfer Act has no application to this case.

Affirmed.

*Lee, Kyle, Holmes* and *Arrington, JJ.,* concur.