455 P.2d 474

Robert E. TRYON and Sheriff of Maricopa County, Arizona, Appellants,

v.

Lou SILVERSTEIN, Appellee.

No. I CA–CIV 663.

Court of Appeals of Arizona.

June 9, 1969.

Rehearing Denied July 18, 1969.
Review Denied Sept. 30, 1969.

Jennings, Strouss, Salmon & Trask, by Rex E. Lee, Phoenix, for appellants.

Goodson, Richmond & Rose, by John F. Goodson, Phoenix, for appellee.

HATHAWAY, Judge.

This appeal tests the validity and priority of the claims of two creditors of Leopold Ackerman, II, to 3060 shares of capital stock of Maricopa County Broadcasters, Inc., registered in Ackerman's name. The appellant, Tryon, claims a prior lien on the shares through a physical levy upon the stock certificates. The appellee, Silverstein, claims a prior lien through an earlier garnishment upon the issuing corporation.

On March 2, 1964, Ackerman had delivered the certificates to the First National Bank of Arizona as collateral for a loan made to him by the Bank. Several writs were served by the parties in an effort to subject these shares to the expected judgments in subsequent suits against Ackerman. Writs of garnishment were served; first, by Silverstein on the issuing corporation; second, by Tryon on First National Bank; third, by Silverstein on First National Bank. The certificates, in the hands of First National Bank, were not actually seized as a result of any of these writs. Under the circumstances, they could not have been seized in view of the Bank's property interest therein. See Moore v. Waterbury Tool Co., 124 Conn. 201, 199 A. 97, 116 A.L.R. 564 (1938).

About two months after Silverstein's second writ was served, the First National Bank amended its answers to the writs in both suits to show that the Ackerman loan had been paid and that it was thereafter holding the certificates subject to the court's order in the Tryon case, the Bank apparently being without notice that Silverstein had first garnisheed the issuing corporation. Shortly thereafter, Tryon obtained judgment against Ackerman, caused a writ of special execution to be served upon the Bank, and the Sheriff of Maricopa County seized the certificates. Silverstein then caused another writ of garnishment to be served, this time upon the Sheriff. The Sheriff answered that the certificates were seized upon authority of the writ of special execution and that they would be sold at an execution sale the following month, unless the sale was enjoined by court order. Silverstein requested such an injunction and it was granted. Tryon appeals from that order, claiming that he has a prior interest in the certificates, and that the injunction is therefore improper.

The question presented is whether Silverstein's initial writ of garnishment was effective. The problem is that our garnishment statutes, taken alone, allow garnishment of capital stock by service of the writ upon an officer of the issuing corporation (See A.R.S. § 12–1573, subsec. 3). The corporation is then required to answer the writ, stating the number of shares, if any, the defendant owned in the corporation at the time the writ was served (A.R.S. § 12–1574, subsec. B); and the corporation is prohibited from transferring any such shares upon its books after service of the writ (A.R.S. § 12–1578). Silverstein apparently complied with these sections. Subsequent to the enactment of the garnishment statutes, however, our legislature enacted the Uniform Stock Transfer Act, Section 13 of which (A.R.S. § 10–243) provides:

"A. No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until the certificate it actually seized by the officer

making the attachment or levy, or is surrendered to the corporation which issued it, or its transfer by the holder is enjoined."

The appellant contends that the above-quoted Section clearly amends or repeals our garnishment statutes by requiring an act in addition to service of the writ of garnishment upon the issuing corporation, i. e., (1) actual seizure of the certificates that have been issued or, (2) surrender of the certificates to the issuing corporation or, (3) enjoining of the holder from transferring legal title.[1] In this case the certificates were not surrendered at any time to Maricopa County Broadcasters, Inc., and no injunction was issued proscribing transfer of the certificates by Ackerman.

■ The Commissioners' Note (by the Commission on Uniform Laws) to Section 1 of the Uniform Stock Transfer Act (A.R.S. § 10–231) states the purpose of the Act as follows:

"* * * [T]he transfer of the certificate is here made to operate as a transfer of the shares, whereas at common law it is the registry on the books of the company which makes the complete transfer. The reason for the change is in order that the certificate may, to the fullest extent possible, be the representative of the shares. This is the fundamental purpose of the whole Act and is in accordance with the mercantile usage." 6 Uniform Laws Annot., 2 (1922).

The primary purpose, then, of the Act is to change the certificate from a mere evidence of ownership of property to a tangible piece of property which may be freely conveyed or given away by intention shown and effective delivery. Most courts have recognized this purpose. Salmon v. Moore, 238 Miss. 459, 118 So.2d 867 (1960); Crane v. Crane, 373 Pa. 1, 95 A.2d 199 (1953); Lyons v. Freshman, 124 Mont. 485, 226 P.2d 775, 23 A.L.R.2d 1165 (1951); Hodson v. Hodson Corporation, 32 Del.Ch. 76, 80

A.2d 180 (1951); Snyder Motor Company v. Universal Credit Company, 199 S.W.2d 792 (Tex.Civ.App.1947); Haughey v. Haughey, 305 Mich. 356, 9 N.W.2d 575 (1943); Mills v. Jacobs, 333 Pa. 231, 4 A.2d 152, 122 A.L.R. 333 (1939); Bloch-Daneman Company v. J. Mandelker & Son, Inc., 205 Wis. 641, 238 N.W. 831 (1931).

■ At common law, shares of stock were not liable to attachment because they represented only an intangible interest which could not be physically seized; they also were not "debts" and were not subject to garnishment. Elgart v. Mintz, 123 N.J. Eq. 404, 197 A. 747 (1938); Husband v. Linehan, 168 Ky. 304, 181 S.W. 1089 (1916); Dupont v. Moore, 86 N.H. 254, 166 A. 417 (1933). Subsequently, attachment and garnishment statutes were passed in most if not all, jurisdictions allowing attachment of shares of stock by prohibiting transfer by the issuing corporation. 7 C.J. S. Attachment § 79. Since the property interest involved consisted only of the right to receive profits and to participate in the assets of the corporation upon liquidation, the certificate itself had no value and could not be attached. As was said in Snyder Motor Company v. Universal Credit Company, supra:

"Under the laws of our State, prior to the enactment of said Act [the Uniform Stock Transfer Act], a valid levy upon corporate stock could only be made at the office of the corporation, irrespective of the location of the stock certificate." 199 S.W.2d at 794.

■ Section 1 of the Uniform Stock Transfer Act, however, changes the shareholders interest from an intangible right to a tangible interest embodied in the certificate, making the transfer of the certificate a transfer of the shares it represents. The certificate must, therefore, either be seized or its conveyance prohibited by some means. Otherwise, the certificate could be transferred to an innocent third party even

---

1. The Uniform Commercial Code, which replaced the Uniform Stock Transfer Act in this state effective January 1, 1968, has eliminated the third alternative, that of enjoining the holder. A.R.S. § 44–3032, subsec. A (U.C.C. § 8–317).

though the issuing corporation is forbidden by the writ from transferring the ownership on its books, the change on the books being a mere recording of the actual transfer. Snyder Motor Company v. Universal Credit Company, supra. This is the reason why Section 13 requires, as a prerequisite to a valid "attachment or levy," that the certificate itself be taken out of circulation. The Commissioners' Note to Section 13 provides, in part:

"* * * [I]t is clearly improper ever to allow an attachment of stock unless some method is adopted to prevent a subsequent transfer of the certificate. Otherwise it is impossible to realize on the attached property since there would always be a possibility of a subsequent transfer of the original certificate."

Consequently, most courts have held that, after enactment of the Uniform Stock Transfer Act, an attachment is invalid unless or until the certificate is seized, surrendered, or its transfer enjoined. Westerman v. Gilbert, 119 F.Supp. 355 (D.R.I. 1953); Levy v. Gittelson, 324 Mich. 242, 37 N.W.2d 105 (1949); Knight v. Shutz, 141 Ohio St. 267, 47 N.E.2d 886, 150 A.L.R. 138 (1943); Dalinda v. Aegg, 175 Misc. 945, 25 N.Y.S.2d 612 (1941); Johnson v. Wood, 15 N.J.Misc. 150, 189 A. 613 (1936); Elgart v. Mintz, supra; Amm v. Amm, 117 N.J.Eq. 185, 175 A. 186 (1934); Bloch-Daneman Company v. J. Mandelker & Son, Inc., supra; Adkins v. Poth, 286 Pa. 555, 134 A. 444 (1926) (dictum). It has also been held that seizure is a condition precedent to a valid levy of execution under the Act. Ballin v. Ballin, Sup., 138 N.Y.S.2d 556 (1954); Wallach v. Stein, 103 N.J. Law 470, 136 A. 209 (1927); Mulock v. Ulizio, 102 N.J.Law 251, 131 A. 622 (1926). Our statutes on execution were amended, to so require, when the Uniform Stock Transfer Act was enacted:

"The officer to whom the writ is directed shall make the levy as follows:

* * * * * *

"5. To levy on the stock of a corporation the officer shall proceed as provided in § 10–243."

A.R.S. § 12–1559. See also § 12–1622, subsec. I, pertaining to sales under execution.

No such amendment was made as to the garnishment statutes, however, and, because Section 13 does not contain the word "garnishment," there is a question as to whether it applies to garnishments.

We know of only two states which have dealt with the question of the effect of the Uniform Stock Transfer Act on garnishment of capital stock. Utah requires, within its garnishment statutes, actual seizure of the certificate. See Glenn v. Ferrell, 5 Utah 2d 439, 304 P.2d 380 (1956). The decision most pertinent to our problem is Snyder Motor Company v. Universal Credit Company, supra. There, it was held that enactment of the Uniform Stock Transfer Act in effect repealed the Texas statute permitting garnishment of the issuing corporation, thereby requiring actual seizure of the certificates when shares of stock are garnished.

The appellant contends that we should follow the Texas case for two reasons. First, Section 19 of the Uniform Act (A. R.S. § 10–249) requires us to construe the provisions of the Act in such a manner as to produce uniformity with decisions in other jurisdictions. Secondly, since we adopted our garnishment statutes from Texas, construction of the statutes by a Texas court would ordinarily be followed here unless there is some compelling reason to the contrary. In re Moore's Estate, 67 Ariz. 65, 190 P.2d 914 (1948).

*Snyder* involved garnishment of the Snyder Motor Company following a judgment against a purported shareholder of the company, D. H. Snyder, Jr. The corporation answered the writ, stating that Snyder owned no shares. Subsequent litigation revealed, however, that, even though certain shares were listed in the name of Snyder's father, D. H. Snyder, Sr., they in fact were owned by Snyder, Jr. The trial court then decreed that the shares be sold pursuant to the garnishment to satisfy the judgment.

The company, on appeal, questioned the validity of the garnishment, contending that the enactment of the Uniform Act requires seizure of the certificates, an act which did not and could not occur because the certificates were in the hands of Snyder, Sr., a nonparty to the garnishment suit. The Texas court of civil appeals accepted that view and reversed the order for sale of the certificates.

■ We agree with the *Snyder* decision insofar as Silverstein's first writ served upon Maricopa County Broadcasters, Inc., is concerned. We find the case distinguishable, however, insofar as Tryon's writ upon the First National Bank is concerned. Unlike the situation in *Snyder,* the purpose of Section 13 of the Uniform Act is not left unsatisfied as to Tryon's first writ. The court in *Snyder,* after quoting Section 1 (A.R.S. § 10–231), supra, stated:

> "The above section negatives the necessity of a transfer on the books of the company. Such transfer under the Act becomes no more than the recording of a deed to land. *Thus, the garnishment writ caught nothing.*"

(Emphasis supplied) 199 S.W.2d at 797. Here, Tryon's first writ cannot be said to have "caught nothing." Whereas in *Snyder,* Snyder, Sr., was free to transfer the certificates after the Snyder Motor Company had been garnisheed, the certificates in the instant case could not have been transferred by Ackerman because he lacked possession of the certificates. See Annot., 23 A.L.R.2d 1171. The pledgee-garnishee, First National Bank, which had possession of the certificates, was prohibited by A.R.S. § 12–1578 et seq., from transferring the certificates in the absence of court order directing such a transfer.

■ At the time the writ was served, First National Bank was a "holder" within the meaning of the term in Section 13. Although the Uniform Act does not define "holder," it does define the term "transfer" as "transfer of legal title." A.R.S. § 10–252, subsec. 8. The "holder," then, must be one who has possession and legal title.

First National Bank held the certificates, presumably endorsed and with right of sale, as security for the loan to Ackerman. It has been held that a pledgee, under such circumstances, can transfer legal title to a bona fide purchaser, Jones v. Costlow, 349 Pa. 136, 36 A.2d 460 (1944), at least insofar as necessary to satisfy the amount of the loan at default. Turk v. Grossman, 176 Md. 644, 6 A.2d 639 (1939). The pledgee may also have the certificates transferred to its own name on the books of the corporation. Moore v. Waterbury Tool Co., supra. Even though a pledgee is not an "owner" in contravention of the pledge agreement, Fardy v. Mayerstein, 221 Ind. 339, 47 N.E.2d 315 (1943), it is a "holder" under terms of the agreement. Because no transfer of shares in this case would have been effective unless the certificates were delivered, and because only the First National Bank could have delivered the certificates so long as it had possession of them, and because its possession was as a "holder," the requirement of Section 13, that "its transfer by the holder is enjoined," is satisfied. As has been pointed out, First National Bank was expressly prohibited by the writ of garnishment from transferring the certificates.

■ We hold, therefore, that Tryon's first writ of garnishment, served upon the First National Bank, was the first effective writ. The fact that the issuing corporation was not served is immaterial, the Uniform Act having done away with the necessity of serving the corporation where certificates have been issued and their ownership ascertained. Nevael Investment Corporation v. Schrunk, 203 Or. 268, 279 P.2d 518 (1955).

■ Although repeals by implication are not favored, and should generally be limited to instances of direct repugnance, City of Mesa v. Salt River Project Agricultural Improvement & Power Dist., 92 Ariz. 91, 373 P.2d 722 (1962), we find such repugnance between the statutes here involved and hold that enactment of the Uniform Stock Transfer Act has impliedly

amended our garnishment statutes to require service of the writ upon the person having possession of the certificate where shares of stock are sought to be garnished. Snyder Motor Company v. Universal Credit Company, supra.

The injunction is vacated.

MOLLOY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120 subsec. E.